IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK, L.L.C.,<br><br>       Plaintiff,<br><br>   v.<br><br>FUN DISH, INC.; FUN DISH OF FLORIDA, INC.; and DISH 1 UP SATELLITE, INC.,<br><br>       Defendant. | Civil Action No.:  1:08 CV 1540<br><br>JUDGE BOYKO<br><br>**DISH NETWORK L.L.C.'S RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| FUN DISH, INC.; FUN DISH OF FLORIDA, INC.; and DISH 1 UP SATELLITE, INC.,<br><br>       Counterclaimant,<br><br>   v.<br><br>DISH NETWORK L.L.C.,<br><br>       Counter-defendants. | |

# TABLE OF CONTENTS

**Page**

BRIEF STATEMENT OF ISSUES PRESENTED ....................................................................ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.      Summary of Argument. ............................................................................................ 1

II.     Summary of Relevant Facts. .................................................................................... 2

III.    Defendants Lack Standing To Assert A Claim For Attempted Monopolization............... 3

      A.     Defendants Have Not Suffered An Antitrust Injury. ........................................... 4

            1.     Defendants' Alleged Harm Is Not The Result Of Any Alleged Anticompetitive Conduct. ............................................................... 5

            2.     Defendants Have Not Alleged, And Cannot Allege, There Was Any Harm to Competition. .......................................................... 8

      B.     Defendants Are Not Proper Antitrust Plaintiffs.................................................... 9

            1.     Defendants' Are Not A Direct Victim Of The Alleged Acts Identified In The FACC. ............................................................... 10

            2.     Any Harm Defendants Suffered Is Not Causally Linked To An Alleged Anticompetitive Act. ................................................... 13

IV.    Defendants Fail To Allege Facts Sufficient To Support The Elements Of A Claim For Attempted Monopolization.......................................................................... 14

V.     The Noerr-Pennington Doctrine Bars The Attempted Monopolization Claim................ 16

VI.    The Court Should Dismiss Defendants' State Law Claims. ............................................ 18

      A.     Defendants Fail to Plead a Claim for Common Law Unfair Competition. ......... 18

      B.     Defendants Fail to Plead a Claim For Tortious Interference with Prospective Business Advantage. ...................................................... 19

VII.   Defendants' Claims Should Be Dismissed Without Granting Defendants Leave To Amend. ....................................................................................................... 19

VIII.  Conclusion ................................................................................................................ 20

## BRIEF STATEMENT OF ISSUES PRESENTED

1.      Should the Court adopt Magistrate Judge McHargh's recommendation to dismiss Defendants' attempted monopolization claim where the facts contained in the First Amended Counterclaim demonstrate that any harm Defendants suffered resulted from acts that are not anticompetitive, and Defendants cannot allege that DISH's alleged conduct resulted in the exclusion of a competitor, a reduction in output, or a reduction in the quality of products provided in the relevant market?

2.      Should the Court adopt Magistrate Judge McHargh's recommendation to dismiss Defendants' attempted monopolization claim when Defendants are not competitors or consumers in the relevant market, and there is a more direct victim of the alleged conduct that forms the basis of Defendants' claims?

3.      Should the Court adopt Magistrate Judge McHargh's recommendation to dismiss Defendants' attempted monopolization claim where Defendants cannot allege that DISH possessed a specific intent to monopolize or that there was a dangerous probability of success that DISH would obtain monopoly power in the relevant market?

4.      Should the Court adopt Magistrate Judge McHargh's recommendation to dismiss Defendants' counterclaims where the conduct that forms the basis of Defendants' causes of action arises out of DISH's acts of petitioning the government to register and enforce its own name as a trademark, and where Defendants failed to allege that DISH engaged in any illegal reprehensible practices such as perjury, fraud, or bribery in registering its marks and instituting this lawsuit?

5.      Should the Court adopt Magistrate Judge McHargh's recommendation to dismiss Defendants' state law causes of action where those causes of action are based upon the conduct that gives rise to Defendants' claim for attempted monopolization and the attempted monopolization claim is fatally defective?

6.      Should Defendants be granted leave to amend their counterclaims where the facts contained in the First Amended Counterclaim demonstrate that Defendants did not suffer an antitrust injury, Defendants lack antitrust standing, and the conduct that forms the basis of Defendants' purported counterclaims constitutes protected petitioning activity under the *Noerr-Pennington* doctrine?

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................7

*Bergmoser v. Smart Document Sols., LLC*,
    No. 07-3357, 2008 WL 624848 (6th Cir. Mar. 5, 2008)........................................................19

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*,
    781 F.2d 604 (7th Cir. 1986) ............................................................................................6, 7, 8

*Campbell v. PMI Food Equip. Group, Inc.*,
    509 F.3d 776 (6th Cir. 2007) .................................................................................................18

*Caruana v. GMC*,
    204 Fed. Appx. 511 (6th Cir. 2006).................................................................................5, 8, 10

*CBC Cos., Inc., v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) ...................................................................................................5

*Comptek Res., Inc. v. Barrister Legal Support Serv., Inc.*,
    No. 81-0954, 1981 WL 48146 (D.D.C. Dec. 22, 1981).......................................................7, 8

*Defiance Hospital v. Faust Cameron, Inc.*,
    344 F. Supp. 2d 1097 (N.D. Ohio 2004)...........................................................................15, 18

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)...............................................................................................................12

*Eaton v. Newport Board of Ed.*,
    975 F.2d 292 (6th Cir. 1992) .................................................................................................17

*Electrical Information Pub., Inc.* v. *C-M Periodicals, Inc.*,
    163 U.S.P.Q. 624 ....................................................................................................................7

*Ford Motor Co. v. Lane*,
    86 F. Supp. 2d 711 (E.D. Mich. 2000)...................................................................3, 9, 13, 20

*G.K.A. Beverage Corp. v. Honickman*,
    55 F.3d 762 (2d Cir. 1995).............................................................................................11, 13

*Gold v. Methodist Healthcare Memphis Hospitals*,
    No. 06-2329, 2008 WL 6875019 (W.D. Tenn. Jan. 15, 2008) .........................................3, 9, 10

*In re Southeastern Milk Antitrust Litig.*,
    555 F. Supp. 2d 934 (E.D. Tenn. 2008).................................................................................3, 4

-iii-

*Indeck Energy Servs. v. Consumers Energy Co.*,
    250 F.3d 972 (6th Cir. 2000) ............................................4, 9

*Invacare Corp. v. Respironics*, Inc., No. 1:04-cv 1580, 2006 WL 3022968,
    (N.D. Ohio Oct. 23, 2006) ............................................18

*Letica Corp. v. Sweetheart Cup Co.*,
    790 F. Supp. 702 (E.D. Mich. 1992)................................17

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ......................................3, 4, 9

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993)................................................16, 17

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ........................................20

*Southaven Land Co. v. Malone & Hyde, Inc.*,
    715 F.2d 1079 (6th Cir. 1983) ....................................10, 13

*Static Control Comp., Inc. v. Lexmark Intern., Inc.*,
    487 F. Supp. 2d 861 (E.D. Ky. 2007) ..............................12

*The Clorox Co. v. Sterling Winthrop, Inc.*,
    117 F.3d 50 (2d Cir. 1997)........................................6, 9

*The Serpa Corp. v. McWane, Inc.*,
    199 F.3d 6 (1st Cir. 1999)........................................11

*Valley Prods. Co. v. Landmark*,
    128 F.3d 398 (6th Cir. 1997) ....................................4, 6, 14

*Weber v. National Football League*,
    112 F. Supp. 2d 667 (N.D. Ohio 2000)..........................5, 6, 14, 15

*Westmac, Inc. v. Smith*,
    797 F.2d 313 (6th Cir. 1986) ......................................17

*White Mule Co. v. ATC Leasing Co. LLC*,
    540 F. Supp. 2d 869 (N.D. Ohio 2008)............................4

*Wilkey v. Hull*,
    No. 09-3140, 2010 WL 653547 (6th Cir. Feb. 24, 2010) ..............19

**OTHER AUTHORITIES**

FED. R. CIV. P. 15 .................................................................................................................19

I.      **Summary Of Argument.**

When reduced to their essence, Counts 8, 9 and 10 of Defendants' First Amended Counterclaim ("FACC") are claims that DISH Network, L.L.C. ("DISH") committed an antitrust violation, engaged in unfair competition, and interfered with purported business relations by registering its own name as a trademark and suing Defendants for infringing its marks. However, the acts of *successfully* registering trademarks with the USPTO and enforcing those marks do not constitute anticompetitive acts.  In addition, such actions represent government petitioning activity that is protected under the *Noerr-Pennington* doctrine.  Moreover, the FACC contains factual allegations that actually preclude a finding that Defendants have standing to maintain their antitrust claim or that DISH's conduct in connection with its trademark application and enforcement efforts were objectively baseless or could otherwise constitute an anticompetitive act.

For these reasons, DISH moved to dismiss Defendants' counterclaims, and after a thoughtful and detailed analysis, Magistrate Judge McHargh agreed with DISH, finding in his Report and Recommendation (the "Report") that Defendants' counterclaims for attempted monopolization, unfair competition, and tortious interference with a prospective economic advantage should be dismissed in their entirety.  Defendants responded by objecting to each and every finding contained in the Report.  However, Defendants' objection fails to present any facts or authorities that call into question Magistrate Judge McHargh's well-reasoned findings and conclusions.

This litigation has been ongoing for more than two years and Defendants have yet to identify any bases for the subject counterclaims.  Accordingly, and for the reasons stated more fully below, DISH requests that the Court adopt the Report and dismiss Counts 8, 9, and 10 of the FACC without granting Defendants leave to amend their counterclaims.

## II.      Summary Of Relevant Facts.

DISH is the nation's third largest pay-TV provider, providing satellite television service to its subscribers under the DISH Network® name and trademark.  Defendant Dish 1 Up is a retailer for DISH's competitor, DIRECTV.  Defendant Fun Dish is a company that acquires and manages toll free numbers for DIRECTV's retailers.

DISH filed this case against Fun Dish, Fun Dish of Florida, and Dish 1 Up (collectively, "Defendants"), alleging that Defendants fraudulently lured DISH customers with phone numbers containing the alphanumeric translation "DISH," and then deceived those customers into believing that they had called DISH itself.  DISH also alleges that Defendants have used, without authorization, DISH's name and federally registered trademarks and logos.

Defendants responded to DISH's claims in this case by filing the FACC, which asserts counterclaims against DISH for attempted monopolization under Section 2 of the Sherman Antitrust Act (Count 8), common law unfair competition (Count 9), and intentional interference with prospective business advantage (Count 10).  Each claim is based primarily upon the allegations that DISH injured Defendants by purportedly securing an invalid trademark registration for the generic word "DISH" and thereafter engaging in anticompetitive acts with respect to the word "DISH."  (FACC at ¶ 69).[1]

In essence, the allegations in the FACC assert that DISH's registration and enforcement of its trademarks somehow permitted DISH to harm its primary competitor in the DBS market— DIRECTV—and Defendants were derivatively injured as a result of the alleged harm to DIRECTV.  Defendants' theory of liability is not only implausible, it suffers from several

---

[1] Defendants attempt to define two separate markets in the FACC:  (1) the direct broadcast satellite of multichannel video programming distribution market (the "DBS market") and (2) the retail services market used to market and sell to customers in the DBS market.  (FACC at ¶ 25).

incurable defects.  As a result, DISH moved to dismiss Counts 8, 9, and 10 of the FACC.  After

the parties fully briefed the Motion to Dismiss and this Court conducted a hearing, Magistrate

Judge McHargh issued his Report and Recommendation (Docket # 127).

In the Report, Magistrate Judge McHargh recommended that each of the causes of action

DISH challenged should be dismissed.  (Report, p. 26, 29-30).  Defendants filed their Objection

to the Report (Docket # 132) (the "Objection") in which Defendants challenge each and every

finding in the Report.  However, Defendants fail to present any authorities, point to any facts,

and provide any other basis for overruling the conclusions reached by Magistrate Judge

McHargh.  Instead, Defendants essentially repeat the arguments raised in the Opposition to the

Motion to Dismiss and conclude that the FACC states viable claims for relief.  However, as the

Report recognizes, courts have frequently rejected claims that are strikingly similar to

Defendants' claims.    Thus, for the reasons stated herein, the Court should adopt the

recommendations in the Report and dismiss Counts 8, 9, and 10 of the FACC.

## III.    Defendants Lack Standing To Assert A Claim For Attempted Monopolization.

Antitrust standing goes beyond Article III standing and is a threshold inquiry.  *NicSand,*

*Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).  In the Sixth Circuit, courts employ a two-part

test to determine whether an antitrust claimant has adequately alleged facts demonstrating that

the plaintiff has antitrust standing.  *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934,

944 (E.D. Tenn. 2008) (*citing Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 976

(6th Cir. 2000)).  The first step in the analysis examines whether the claimant has asserted a

cognizable "antitrust injury."  *Id.* at 944; *Gold v. Methodist Healthcare Memphis Hospitals*, No.

06-2329, 2008 WL 6875019, at *5 (W.D. Tenn. Jan. 15, 2008); *Ford Motor Co. v. Lane*, 86 F.

Supp. 2d 711, 714-15 (E.D. Mich. 2000).  If the claimant sufficiently alleges that it suffered an

antitrust injury, the court then considers whether the claimant is the appropriate party to maintain

an antitrust claim—i.e., whether the claimant is an efficient enforcer of the antitrust laws. *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d at 944; *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 884-85 (N.D. Ohio 2008).

Magistrate Judge McHargh concluded that Defendants lack standing to maintain a claim against DISH for attempted monopolization of the DBS market. (Report, p. 16). Defendants have objected to that conclusion, arguing that the facts asserted in the FACC demonstrate that Defendants have standing to sue for attempted monopolization of the DBS market and the market for DBS retail services. (Objection, p. 13). However, when the allegations in the FACC are analyzed under the controlling authorities, it is apparent Magistrate Judge McHargh is correct that Defendants lack standing to sue for attempted monopolization because (1) Defendants have not suffered an antitrust injury, and (2) Defendants are not an appropriate antitrust plaintiff.

### A. Defendants Have Not Suffered An Antitrust Injury.

It is well-settled that not all injuries constitute antitrust injury. The antitrust laws were enacted for the benefit of competition, not competitors. *NicSand, Inc.*, 507 F.3d at 449; *Valley Prods. Co. v. Landmark*, 128 F.3d 398, 406 (6th Cir. 1997). Therefore, it is not enough for a party asserting an antitrust claim to allege an economic injury; the claimant must allege an antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's conduct unlawful. *Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000); *Valley Prods. Co.*, 128 F.3d at 406.

In the Objection, Defendants baldly assert that the FACC contains sufficient factual detail to plausibly allege that Defendants suffered an antitrust injury. (Objection, p. 13). Contrary to Defendants' assertion, however, the factual allegations in the FACC demonstrate that any harm Defendants may have suffered cannot be an antitrust injury because: (1) Defendants' alleged harm flows directly from conduct that is not anticompetitive; and (2) Defendants have not

alleged, and cannot allege, that competition has been harmed as a result of DISH registering its trademarks and filing the instant suit. Accordingly, Defendants failed to plausibly allege that Defendants suffered an antitrust injury, which warrants dismissal of Defendants' attempted monopolization claim. (Report, p. 16).

> 1. **Defendants' Alleged Harm Is Not The Result Of Any Alleged Anticompetitive Conduct.**

One of the most basic tenets of antitrust law is that the party asserting a claim under the Sherman Act must allege facts showing that its alleged injury arose from "an anticompetitive aspect of the practice under scrutiny." *CBC Cos., Inc., v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009). An antitrust claim is subject to dismissal where the injury, even if linked to an alleged violation of the antitrust laws, flows directly from conduct that is not itself an antitrust violation. *See Caruana v. GMC*, 204 Fed. Appx. 511, 516 (6th Cir. 2006).

The allegations contained in the FACC demonstrate that Defendants' alleged harm, if any, flows from conduct that is not itself an antitrust violation. The FACC asserts that Defendants' alleged harm purportedly flows directly from two general acts: (1) DISH's registration of the marks at issue in this case, and (2) DISH's attempts to enforce its marks by filing this lawsuit. (FACC, ¶¶ 68-69). Neither the act of successfully registering its trademarks, nor the act of instituting this suit constitutes an anticompetitive act on DISH's part.

More specifically, as Magistrate Judge McHargh found, DISH successfully registered the trademarks at issue in this case with the USPTO. (Report, pp. 18-19). As a result, those marks are presumptively valid, and DISH's efforts to register those marks do not constitute anticompetitive conduct. *See, e.g., Weber v. National Football League*, 112 F. Supp. 2d 667, 672 (N.D. Ohio 2000) (efforts to protect trademark rights represent fair competition and do not violate the antitrust laws).

Similarly, DISH's efforts to enforce its rights in those marks by filing this lawsuit do not constitute anticompetitive conduct.  (Report, p. 19).  Several courts, including the Sixth Circuit Court of Appeals, have analyzed situations in which a party alleged that a trademark owner had committed an antitrust violation by allegedly abusing its trademark rights in an effort to stifle competition in a particular market.  *See Valley Prods. Co.*, 128 F.3d at 406; *The Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997); *see also Weber*, 112 F. Supp. 2d at 672.  Each court rejected those claims.  *See Clorox*, 117 F.3d at 57.  The courts based their decisions on the fundamental axiom that an effort to enforce one's rights in a registered trademark is not an antitrust violation because a trademark, by its nature, is not exclusionary.  *See Valley Prods. Co.*, 128 F.3d at 406; *Clorox*, 117 F.3d at 56 (trademarks are by their nature non exclusionary because all that is required to escape the clutches of an alleged trademark monopoly is to market a product under a different name).

While Defendants argue that their attempted monopolization claims should not suffer the same fate, Defendants fail to point to any facts in the FACC that support such a distinction.  Instead, Defendants assert that "[m]any courts have held that attempts to monopolize, based on an improvidently registered trademark that was obtained by a sequence of deceptive acts violate the Sherman Act."  (Objection, p. 11).  However, none of the cases upon which Defendants rely stand for such a proposition.

In two of the cases Defendants rely upon, the courts were not faced with a situation in which a claim for attempted monopolization was asserted in response to a claim for trademark infringement.  *See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986); *Electrical Information Pub., Inc.* v. *C-M Periodicals, Inc.*, 163 U.S.P.Q. 624, 633.  In fact, the

*Blau* court did not even mention the Sherman Act or the term "antitrust."  *Blau Plumbing*, 781 F.2d at 609.  The *C-M Periodicals* case is also readily distinguishable.

In the *C-M Periodicals* case, the defendant established that the plaintiff submitted four affidavits to the USPTO, which contained material statements of fact that the plaintiff knew were false when submitted.  *C-M Periodicals,* 163 U.S.P.Q. at 633.  The defendant also established that the plaintiff had instituted other suits against parties that the plaintiff alleged were infringing its marks even though the plaintiff knew that its marks were unenforceable and had been procured by fraud on the USPTO.  *Id.*  In contrast, Defendants here have not pleaded any facts that suggest DISH made any fraudulent misrepresentations to the USPTO in connection with the registration of the marks at issue in this case, or that DISH has instituted lawsuits to enforce marks that are indisputably unenforceable.

Furthermore, in the *Comptek* case on which Defendants heavily rely, the Court did not hold, as Defendants claim, that a sequence of deceptive acts in attempting to register and enforce a trademark actually violated the Sherman Act.  *Comptek Res., Inc. v. Barrister Legal Support Serv., Inc.*, No. 81-0954, 1981 WL 48146 at *1 (D.D.C. Dec. 22, 1981).  To the contrary, the *Comptek* court did not discuss acts taken in the registration process, and merely denied the motion to dismiss the antitrust counterclaim, and, in doing so, expressed skepticism regarding the merits of the antitrust counterclaim.  *Comptek*, 1981 WL 48146, at *1.  In addition, the *Comptek* case was decided 25 years prior to *Twombly*, and is an example, as is this case, of the type of claim about which the Supreme Court was concerned when it declared that a plaintiff must offer enough factual detail in a complaint to raise the right to relief above the speculative level in order to state a plausible claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, as Magistrate Judge McHargh observed, in the cases Defendants cite, the claimants alleged that the defendants in those cases had engaged in conduct that went "well-beyond" the scope of simply seeking to protect their trademarks.  (*See* Report, p. 18 analyzing *Blau Plumbing* and *Comptek*).  In contrast, as Magistrate Judge McHargh found, the conduct that forms the basis of Defendants' counterclaims here relates solely to DISH's legitimate efforts to enforce its trademarks.  (FACC ¶ 69); (*see also* Report, p. 18).  Because an effort to register and protect a trademark is not an anticompetitive act, any harm Defendants may have suffered could not flow directly from an anticompetitive act.  As a result, Defendants have not suffered an antitrust injury, and Defendants lack standing to sue DISH for attempted monopolization of the DBS market or the market for DBS retail services.  *See Caruana*, 204 Fed. Appx. at 516.

> **2.**     **Defendants Have Not Alleged, And Cannot Allege, There Was Any Harm to Competition.**

Magistrate Judge McHargh also correctly found that Defendants failed to allege that their purported injury resulted from an adverse effect on the relevant market—i.e., from harm to competition.  (Report, pp. 18-19).  While Defendants object to this finding, they did so without identifying any facts that plausibly show that competition has been harmed by DISH's acts of registering seven trademarks and prosecuting its claims against Defendants.  Instead, again relying heavily on the *Comptek* case, Defendants simply conclude that the FACC sets forth sufficient facts that, if proven, could cause a jury to find that DISH misappropriated a generic term and used that term to improperly increase its market power in violation of the Sherman Act. (Objection, p. 12).  Even under the most deferential reading, Defendants fail to demonstrate that Defendants have, or even could, allege facts showing that DISH's trademark enforcement activities have harmed competition.

As stated above, the Sixth Circuit has determined that an antitrust claimant cannot satisfy the antitrust injury requirement unless it is contended that the alleged anticompetitive conduct has reduced competition as a whole.  *NicSand*, 507 F.3d at 455; *Ford Motor Co.*, 86 F. Supp. 2d at 714.  This requires Defendants to "at least allege that exclusion of the competitor from the marketplace results in the elimination of a superior product or a lower-cost alternative."  *Indeck Energy Servs.*, 250 F.3d at 977.  Moreover, courts analyze the question of antitrust injury from the viewpoint of the consumer of the product or service at issue.  *Gold*, 2008 WL 6875019, at *6.

Defendants have not alleged facts to show that DISH's successful registration of seven trademarks and subsequent initiation of a single trademark infringement suit has excluded a competitor from the market, reduced the quality of DBS provided to consumers, or resulted in an increase in the prices charged to consumers for DBS.  *See Indeck* 250 F.3d at 977; *Gold*, 2008 WL 6875019 at *6.  At most, the FACC alleges that Defendants are limited in their ability to publicize DIRECTV services because DISH has attempted to exercise a monopoly over the word "dish."  (FACC at ¶¶ 37, 37, 47, 53, 57, 68-72.).  However, such an allegation fails to assert that there has been an effect on competition.  Furthermore, in the absence of an allegation that a competitor has been excluded from the market, which Defendants cannot allege, a claim to exclusive rights in words does not, even if excessive, amount to a violation of the antitrust laws. *See Clorox Co.*, 117 F.3d at 56.  Thus, Defendants have failed to allege facts showing that there has been harm to competition, and the attempted monopolization claim should be dismissed.

### B.     Defendants Are Not Proper Antitrust Plaintiffs.

The second prong of the Sixth Circuit's test for antitrust standing examines whether the claimant is an efficient enforcer of the antitrust laws.  *Gold*, 2008 WL 6875019, at *8.  To make this determination, courts examine the causal connection between the alleged antitrust violation and harm to the plaintiff, and whether that harm was intended to be caused; the nature of the

claimant's alleged injury, including the status of the claimant as a consumer or competitor in the market; the tenuous and speculative character of the relationship between the alleged antitrust violation and the claimant's alleged injury; the potential for duplicative recovery or complex apportionment of damages; and the existence of more direct victims of the alleged conspiracy. *Southaven Land Co. v. Malone & Hyde, Inc*., 715 F.2d 1079, 1085 (6th Cir. 1983). Courts balance these factors, and no single factor is determinative. *Gold*, 2008 WL 6875019, at *8.

Applying these standards, Magistrate Judge McHargh properly concluded that Defendants lack standing to maintain a claim for attempted monopolization based upon DISH's attempt to enforce its presumptively valid trademarks. (Report, p. 16). Magistrate Judge McHargh correctly reasoned that there are more direct victims of the alleged anticompetitive conduct than Defendants, and any harm Defendants may have suffered as an intermediary in the DBS market was too remote to confer standing upon Defendants under the federal antitrust laws. (Report, pp. 14, 16). Magistrate Judge McHargh also correctly found that any harm to Defendants flowed directly from conduct that is not itself an antitrust violation.[2] (Report, p. 19). While Defendants have objected to those findings, their objections lack any basis in law or fact.

### 1. Defendants Are Not A Direct Victim Of The Alleged Acts Identified In The FACC.

Several factors in the antitrust standing analysis require courts to consider the status of the claimant in the relevant market and whether another party is a more appropriate party to maintain the asserted claim. *See Southaven Land Co.*, 715 F.2d at 1085. In conducting this analysis, courts consider, among other things, whether the claimant is a competitor or a consumer in the relevant market, and whether there is a more direct victim of the defendants'

---

[2] As explained more fully below, the analysis of whether the alleged harm resulted from conduct that is itself an antitrust violation is part of the inquiry into antitrust injury and whether the claimant is a proper antitrust plaintiff.

alleged conduct.  *See Caruana*, 204 Fed. Appx. at 516 (no standing because, *inter alia,* the plaintiff was neither a consumer, nor a competitor in the relevant market).

Magistrate Judge McHargh began his analysis of Defendants' status in the relevant markets by noting that Defendants admit that they are not direct competitors in the DBS market, and that Defendants do not allege, and there is no evidence, that DISH is a direct participant in the retail services market (to the extent it is a cognizable market).  (Report at 21).  Magistrate Judge McHargh also correctly recognizes that several courts have held that any injury suffered by commercial intermediaries, such as distributors or sales representatives, is generally too remote to grant them antitrust standing.  *The Serpa Corp. v. McWane, Inc*., 199 F.3d 6, 11 (1st Cir. 1999) ("a commercial intermediary, such as a distributor or sales representative, generally lacks standing because its antitrust injury is too remote."); *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995).  Accordingly, because Defendants are not consumers or competitors in the DBS market and, as a commercial intermediary for DIRECTV, any harm Defendants suffered would have been derivative of harm suffered by DIRECTV, Magistrate Judge McHargh correctly concluded that Defendants were not the appropriate party to assert a claim for any attempt to monopolize the DBS market (Report, p. 16).

In the Objection, Defendants have not pointed to any facts or authorities that demonstrate Defendants have standing to sue for attempted monopolization of the DBS market.  The reason is simple—Defendants are not competitors of DISH and they are not consumers of DISH's services.   As a result, Defendants lack standing to sue DISH for any alleged attempted monopolization of the DBS market.

Nevertheless, Defendants have refused to concede their attempted monopolization claim. Rather, Defendants have tried to salvage their claim by constructing a new theory of antitrust

liability, arguing that Defendants have standing to sue for alleged harm to both the DBS market and the market for DBS retail services because the market for DBS retail services is "inextricably intertwined" with the DBS market.  (Objection, p. 8; Counterclaim ¶69).

Defendants cite two cases in support of their novel theory:  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) and *Static Control Comp., Inc. v. Lexmark Intern., Inc.*, 487 F. Supp. 2d 861 (E.D. Ky. 2007).   However, *Kodak* and *Static Control* both involve a situation in which a party asserted a tying claim brought under the Sherman Act, and in each case the courts were concerned with whether the plaintiff could assert a viable tying claim when it was not disputed that the defendant lacked market power in the tying product market.  *Kodak.*, 504 U.S. at 455.  Those cases are inapposite, and, contrary to Defendants' representations to this Court, nothing in either *Kodak* or *Static Control* supports Defendants' contention that a party's alleged attempts to monopolize one market (here the DBS market) can support an allegation that antitrust injury was suffered in another market (the retail services market) simply because the two markets are, as Defendants contend, interdependent markets.  The Supreme Court's analysis in *Kodak* actually demonstrates that Defendants' interdependent market theory lacks merit.

In *Kodak*, the Supreme Court recognized that, to state a tying claim, the claimant must generally establish that the defendant possessed market power in the tying product market and that the tying arrangement affected a substantial volume of commerce in the tied product market. *Kodak*, 504 U.S. at 462.  While there are a number of other flaws in Defendants' "interdependent markets" theory, for that theory to be viable under the Supreme Court's holding in *Kodak*, Defendants must, at the very least, allege that DISH exercised market power in at least one of the alleged interdependent markets.   Defendants, however, have not made such an allegation. Furthermore, Defendants cannot make such an allegation as Defendants admit that DISH only

has a 45% share of the market in the DBS market, while DIRECTV has 55%, and it is undisputed that there are thousands of competitors in the alleged retail services markets, a market in which DISH is not a direct participant. (FACC, ¶¶ 25, 26, 71). Thus, Defendants' "inextricably intertwined" markets theory is not only based on a distortion of the law, it is undermined by the very cases Defendants contend support the theory.

Even if, as Defendants allege, the DBS market and retail services market are intertwined, such a relationship does not confer standing upon Defendants to sue for conduct that was allegedly directed at a market in which Defendants do not compete.  The fact is that Defendants are commercial intermediaries who lack standing to sue because they are not competitors or consumers in the DBS market, and therefore are not direct victims of DISH's alleged anticompetitive conduct.  *G.K.A. Beverage Corp.*, 55 F.3d at 766-67.  The defects in Defendants' interdependent markets theory are sufficient, standing alone, to adopt Magistrate Judge McHargh's recommendation to dismiss Defendants' attempted monopolization claim.

### 2.    Any Harm Defendants Suffered Is Not Causally Linked To An Alleged Anticompetitive Act.

Another factor courts consider in the antitrust standing analysis is the causal connection between the alleged antitrust violation and the harm that was allegedly suffered.  *Southaven Land Co.*, 715 F.2d at 1085.  A logical overlap exists between this factor and the antitrust injury inquiry.  *See Ford Motor Co.*, 86 F. Supp. 2d at 715,  n. 2 (E.D. Mich. 2000) (antitrust injury and antitrust standing share a common ingredient).  Under both analyses, courts examine whether the claimant has been injured as a result of a restraint on competition.  *See id*.

Defendants' alleged harm does not flow from any harm to competition.  To the contrary, the harm Defendants allegedly suffered flows, if at all, directly from DISH's legitimate attempts to register and protect its presumptively valid trademarks.  Courts in the Sixth Circuit, including

this Court, have analyzed similar claims, and have consistently held harm that results from a party's efforts to enforce its trademark rights does not flow from an antitrust violation, and therefore is not the type of harm the antitrust laws were intended to prevent.  *See Valley Prods. Co.*, 128 F.3d at 402; *Weber* 112 F. Supp. 2d at 672-73.  Defendants' alleged harm results from conduct that is not itself an anticompetitive act (i.e., DISH's legitimate efforts to enforce its trademark rights).   Therefore, Defendants cannot establish a causal connection between an antitrust violation and Defendants' alleged harm.   Defendants' inability to establish such a connection provides independent support for the adoption of the Report and dismissal of Defendants' attempted monopolization claim.

## IV.   Defendants Fail To Allege Facts Sufficient To Support The Elements Of A Claim For Attempted Monopolization.

Magistrate Judge McHargh found that Defendants' attempted monopolization claim fails, *inter alia*, because the allegations in the FACC demonstrate that Defendants cannot plausibly allege that there was a dangerous probability that DISH would achieve monopoly power in the DBS market or the market for DBS retail services.  (Report, p. 20, n. 7, p. 21).  Defendants' Objection claims that the allegation that DISH possesses a 45% market share in the DBS market is sufficient to plausibly allege a dangerous probability that DISH would achieve monopoly power in the DBS market and the market for DBS retail services.  (Objection, p. 13-14).

With respect to the DBS market, Defendants cite no authority in which a court held an allegation that a party held a 45% market share was sufficient to plausibly allege there was a dangerous probability of achieving monopoly power.   To the contrary, in the Objection, Defendants acknowledge that this Court previously held that a market share of less than 50% does not satisfy the requirement that there is a dangerous probability of achieving monopoly

power in the absence of other factors, none of which are alleged to exist in this case.  *Defiance Hospital v. Faust Cameron, Inc*., 344 F. Supp. 2d 1097, 1116-17 (N.D. Ohio 2004).

In addition, the allegations in the FACC conclusively negate any possibility that there is a dangerous probability that DISH would achieve monopoly power in the DBS retail market. Specifically, Defendants acknowledge that DISH is not a direct competitor of Defendants and is not a direct participant in the DBS retail market.  (FACC, ¶¶ 25, 26, 71; Objection, p. 8). Defendants also do not dispute the fact that there are numerous competitors in the DBS retail market.  (*See* Objection, p. 5).  Taken as a whole, these allegations preclude a finding that there is a dangerous probability DISH would achieve monopoly power in the retail market.[3]

Predictably, Defendants simply gloss over these facts, and argue that the allegations regarding DISH's market share in the DBS market are sufficient to allege a dangerous probability of achieving monopoly power in the DBS retail market because the two markets are allegedly "inexorably intertwined."  (Objection, p 13).   However, Defendants fail to point to any case in which a Court has held that a party's market share in one market can be used to establish a party's market share in another, distinct market.  Furthermore, as stated above, DISH lacked sufficient market share in the DBS market for there to be a dangerous probability that DISH would achieve monopoly power in the DBS market.  It defies logic for Defendants to argue that DISH could somehow have market power in the DBS retail market due to an alleged interrelationship between the DBS market and the DBS retail market when DISH lacks market power in the DBS market.

---

[3] While not addressed in the Report, the Motion to Dismiss also demonstrates Defendants cannot establish that DISH had an intent to monopolize.  A specific intent to monopolize may be inferred from anticompetitive conduct, but not from legitimate business practices aimed at succeeding in competition.  *Weber*, 112 F. Supp 2d at 674  This Court has applied this rule when holding that an attempt to enforce a trademark is a legitimate business practice that is not evidence of an intent to monopolize.  *Id.*  Because the only conduct at issue here is DISH's attempt to enforce its trademarks, Defendants fail to allege facts that plausibly show a specific intent to monopolize.

As Magistrate Judge McHargh found, the allegations in the FACC fail to plausibly allege that there is a dangerous probability that DISH would achieve monopoly power in the DBS market or the purported market for DBS retail services.  This Court should adopt the recommendation and dismiss Defendants' attempted monopolization claim.

## V.      The *Noerr-Pennington* Doctrine Bars The Attempted Monopolization Claim.

The *Noerr-Pennington* doctrine provides that "[t]hose who petition the government . . . are generally immune from antitrust liability," *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993).   Under *Noerr-Pennington*, courts first look to the legal viability of the suit or other petitioning activity to determine whether it is objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits."  *Id.* at 60-61. Only if the challenged activity is objectively meritless may a court move on to examine the litigant's subjective motivation.  *Id.* at 60.

Magistrate Judge McHargh applied these principles to correctly find that DISH's conduct is protected under the *Noerr-Pennington* doctrine.  With respect to the registration of DISH's trademarks, Magistrate Judge McHargh found that the fact that DISH successfully registered seven trademarks with the USPTO demonstrates that DISH's registration efforts were not objectively baseless and, therefore, is not sham petitioning.  (Report, p. 25).  With respect to this lawsuit, Magistrate Judge McHargh found that the allegations in the Third Amended Complaint provide a basis for a reasonable trademark holder to conclude that pursuit of this action is reasonably calculated to elicit a favorable outcome.  (Report, p. 26).

Defendants object by simply concluding that DISH's conduct is objectively baseless and therefore constitutes sham petitioning.  Defendants assert that the successful registration of a trademark fails to demonstrate that DISH's trademark registration applications are not objectively baseless. (*See* Objection, p. 16).  However, as Magistrate Judge McHargh found,

DISH successfully registered its marks with the USPTO. (Report, p. 26). Because DISH accomplished its intended goal—the USPTO granted its trademark applications—the filing of the registrations cannot constitute sham petitioning. *See Eaton v. Newport Board of Ed.*, 975 F.2d 292, 298 (6th Cir. 1992).

Defendants also object to Magistrate Judge McHargh's finding that DISH's pursuit of its claims in this case are not objectively baseless by merely arguing, without any supporting facts, that a trademark infringement lawsuit brought to enforce a registered trademark can constitute sham petitioning in the absence of facts alleging that a party engaged in fraud or other illegal conduct. (Objection, p. 15). However, as Magistrate Judge McHargh observed, Defendants are using telephone numbers that employ DISH's trademarks and are confusingly similar to DISH's primary telephone number, and DISH filed this suit to protects its rights in those presumptively valid marks. (Report, p. 26). These allegations provide a basis for a reasonable trademark holder to conclude that pursuit of this action is reasonably calculated to elicit a favorable outcome. *See Letica Corp. v. Sweetheart Cup Co.*, 790 F. Supp. 702, 706 (E.D. Mich. 1992).[4]

In addition, Defendants fail to include facts in the FACC that allege DISH engaged in "illegal reprehensible practices such as perjury, fraud, conspiracy with or bribery of governmental decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process" as required to state a sham petitioning claim. *See Westmac, Inc. v. Smith*, 797 F.2d 313, 317 (6th Cir. 1986).

Simply put, Defendants assert no facts that demonstrate an objective trademark holder would not expect to prevail on the claims in this case—claims that are brought to enforce presumptively valid trademarks that incorporate DISH's own name. Consequently, Defendants

---

[4] Because DISH's suit is not objectively baseless, the Court does not consider DISH's subjective intent. *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. at 56. Thus, Defendants' arguments relating to DISH's alleged intent for bringing this suit not only lack a factual foundation, they are irrelevant.

fail to adequately plead the basis for a claim that falls within the sham litigation exception to *Noerr-Pennington* immunity, and Defendants' antitrust claim should be dismissed.

## VI.    The Court Should Dismiss Defendants' State Law Claims. [5]

### A.    Defendants Fail to Plead a Claim for Common Law Unfair Competition.

The Report correctly finds that Defendants' unfair competition claim should be dismissed because the unfair competition claim is founded upon the same conduct as Defendants' defective antitrust claim, and courts have held that where a state law claim is based upon the same conduct as an antitrust claim and the antitrust claim fails, the state law claim also fails.  (Report, p. 27 (*citing Invacare Corp. v. Respironics*, Inc. No. 1:04-cv 1580, 2006 WL 3022968, at *14-15 (N.D. Ohio Oct. 23, 2006)).  The Report also correctly concludes that federal law preempts Defendants' unfair competition claim.  (Report, p. 28).

Defendants assert that a substantial line of authority supports the view that enforcement of a patent right is actionable as unfair competition provided there are allegations or evidence of bad faith on the patentee's part.  (Objection, p. 18).  However, this a trademark, not a patent case, and courts have found that, where common law unfair competition claims are based exclusively on purported anticompetitive conduct under the Sherman Act, and the Sherman Act claim fails, the common law unfair competition claims fails and must be dismissed as well.  *Id.*; *see also Defiance Hosp., Inc.*, 344 F. Supp. 2d at 1118.  Because Defendants base their unfair competition claim upon the same allegations as their attempted monopolization claim and the attempted monopolization fails to state a plausible claim for relief, the unfair competition claim also fails to state a plausible claim for relief.  *Invacare*, 2006 WL 3022968, at *14-15.  As a result, the Court should affirm the findings in the Report.

---

[5] Defendants' unfair competition and tortious inference claims are also subject to dismissal because the *Noerr-Pennington* doctrine applies to claims brought under both state and federal laws, including common law claims of tortious interference.  *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 790 (6th Cir. 2007).

**B.     Defendants Fail to Plead a Claim For Tortious Interference with Prospective Business Advantage.**

The final claim the Report analyzes is Defendants' claim for tortious interference with prospective economic advantage, concluding that Defendants fail to plead facts that plausibly state a claim for tortious interference with a prospective business relationship because Defendants fail to identify even a single customer that Defendants lost as a result of DISH's efforts to register and enforce its trademarks.  (Report, p. 29).

Defendants' Objection asserts that the FACC adequately pleads that DISH has interfered with Defendants' prospective business relationships because it alleges that DISH has interfered with potential relationships between Defendants and potential end user customers of DIRECTV's satellite programming and services.  (Objection, p. 18).  Defendants ignore the Sixth Circuit case law in which courts consistently found strikingly similar allegations insufficient to assert a claim for tortious interference with a prospective business relationship under Ohio law.  *See Wilkey v. Hull*, No. 09-3140, 2010 WL 653547, at *3 (6th Cir. Feb. 24, 2010).  The Sixth Circuit consistently has held that vague assertions of interference are nothing more than bare legal conclusions that are entitled to no weight.  *See id*.  Thus, in the absence of factual allegations that DISH's conduct ended or prevented a business relationship between Defendants and a prospective customer, Defendants fail to state a claim for tortious interference with a prospective business relationship.  *See id*.  The Report should be adopted and Defendants' claim for tortious interference with a prospective business relationship should be dismissed.

**VII.    Defendants' Claims Should Be Dismissed Without Granting Defendants Leave To Amend.**

This Court has discretion to deny leave to amend when the pleadings demonstrate that further amendment would be futile.  FED. R. CIV. P. 15; *see Bergmoser v. Smart Document Sols., LLC*, No. 07-3357, 2008 WL 624848, at *3 (6th Cir. Mar. 5, 2008).  Amendment is futile when

the amended pleading would not withstand a Rule 12(b)(6) motion to dismiss. *Id*. In the antitrust context, amendment is futile when the pleadings demonstrate that the plaintiff cannot establish antitrust standing or allege a plausible attempted monopoly. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *see Ford Motor Co*, 86 F. Supp. 2d at 721.

As demonstrated in detail above, Defendants cannot amend their claims in a way that would withstand a subsequent Rule 12(b)(6) motion to dismiss. Specifically, the allegations in the FACC demonstrate that: (1) the harm Defendants allegedly suffered resulted from acts that are not themselves anticompetitive; (2) Defendants cannot allege harm to competition; and (3) Defendants were not competitors of DISH or consumers of DISH's services. As a result, the allegations in the FACC preclude Defendants from alleging that they have antitrust standing or have suffered an antitrust injury.

In addition, the allegations in the FACC also preclude Defendants from plausibly alleging that there is a dangerous probability that DISH would achieve market power in the DBS market or the market for DBS retail services, or that DISH had a specific intent to monopolize. Thus, Defendants cannot allege material elements of their attempted monopolization claim.

Finally, the *Noerr-Pennington* doctrine serves as an affirmative bar to each of the claims DISH challenged with its Motion to Dismiss. Accordingly, leave to amend should be denied because amendment would be futile.

## VIII. Conclusion.

For the foregoing reasons, DISH respectfully requests that the Court overrule Defendants' Objection to the Report and Recommendation, adopt the Report and Recommendation, grant the Motion to Dismiss, and dismiss the Eighth, Ninth, and Tenth Causes of Action in the FACC without granting Defendants leave to amend.

**HAGAN NOLL & BOYLE**

Joseph H. Boyle (pro hac vice)
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX  77024

**CALFEE, HALTER & GRISWOLD LLP**
Raymond Rundelli (0030778)
1400 KeyBank Center
Cleveland, Ohio 44114-2688

**ATTORNEYS FOR PLAINTIFF**

**DLA PIPER LLP (US)**

*/s/ James R. Nelson*

Cynthia A. Ricketts (*pro hac vice*)
cindy.ricketts@dlapiper.com
Aaron T. Goodman (*pro hac vice*)
aaron.goodman@dlapiper.com
2525 E. Camelback Rd, Suite 1000
Phoenix, AZ 85016
Telephone:  (480) 606-5100
Facsimile:  (480) 606-5101

James R. Nelson (*pro hac vice*)
jr.nelson@dlapiper.com
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

**ATTORNEYS FOR PLAINTIFF**

## **CASE TRACK AND PAGE LIMIT CERTIFICATION**

I hereby certify that this matter is on a standard track, which provides for a 20 page limit under Local Rule 7.1(f) on briefs related to dispositive motions.  This brief complies with the 20 page limit.


*/s/ James R. Nelson*_____
Cynthia A. Ricketts (*pro hac vice*)
cindy.ricketts@dlapiper.com
Aaron T. Goodman (*pro hac vice*)
aaron.goodman@dlapiper.com
2525 E. Camelback Rd, Suite 1000
Phoenix, AZ 85016
Telephone:  (480) 606-5100
Facsimile:  (480) 606-5101

James R. Nelson (*pro hac vice*)
jr.nelson@dlapiper.com
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2010, a copy of Plaintiff's Response in Opposition to Defendants' Objection to the Magistrate Judge's Report and Recommendation was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/ James R. Nelson*
James R. Nelson