**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DISH NETWORK LLC** | ) | **CASE NO.1:08CV1540** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **FUN DISH, INC. ET AL.,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the discovery dispute hearing held September 14, 2012. The Court held the hearing due to the conflicting representations by counsel and parties regarding the discovery in this case.  The Court held the hearing after providing notice of possible sanctions to all parties.  Having reviewed all the briefs, affidavits, motions for sanctions, and testimony the Court has determined both parties have engaged in sanctionable conduct.

By way of procedural background, the Court set a new discovery schedule on  August 16, 2011, including a discovery cut-off date of February 15, 2012.  As part of that order, the Court denied as moot several discovery disputes pending due to the issuance of the new discovery

schedule.  The Court ordered the parties to submit briefs outlining their discovery disputes that required court intervention.  In August and September of 2011, the parties briefed their respective positions, outlining vast amounts of discovery not yet produced.  These briefs revealed contradictory representations by counsel and parties regarding what discovery was produced and withheld.  On February 22, 2012, the parties submitted affidavits, pursuant to Court order, supporting the representations in their discovery briefs.  It is on these briefs and affidavits and declarations of counsel filed February 22, 2012, and the Motions for Sanctions filed by both parties at ECF 262 & 274 that are the bases of this Order.

Throughout the pendency of this case and due to the inability of counsel to work cooperatively the Court has had to issue several discovery orders, resolve multiple informal disputes and issue multiple referrals to Magistrate Judges for resolution of discovery disputes, revised pleadings, preliminary injunction requests ad nauseum.  Although tens of thousands of pages of discovery have been exchanged, it appears we are no further down the road to resolving this case than when we started.  This latest round of disputes and motions for sanctions includes the following discovery contentions.

**Plaintiff Dish Network**

Plaintiff contends Defendants have failed to produce Electronic Discovery as requested. Defendants have produced two months worth of electronic discovery from Defendants Firas Essa and Alisha Pickering.  Plaintiff seeks Electronic Records from 2002 through the present.

Plaintiff further contends Defendants have failed to produce the following records as requested and which they (Defendants) allegedly agreed to produce:

1)      Cancellation reports from 2002;

2

2)      Call scripts;

3)      Fun Dish and Fun Dish of Florida financial statements;

4)      Advertising and marketing materials;

5)      Screen shots of Defendants' websites containing the term DISH in the domain name;

6)      Documents from Page One Solutions (Defendants' web redesigner);

7)      Documents relating to the registration of DISH Marks reflecting Defendants' knowledge that the Marks were registered to DISH;

8)      Documents regarding customers converted from DISH to DIRECTV;

9)      Communications between Defendants and government agencies including BBB related to customer complaints from 2002 to present;

10)     Monthly invoices related to the phone numbers in dispute;

11)     Documents regarding Defendant and Atlas Marketing (allegedly a company with whom Defendants entered into a call forwarding arrangement;

12)     Performance and disciplinary actions for Defendants' managers, employees, reps;

13)     Documents regarding Addendum Recovery Services (company that monitored and audited Defendants' handling of calls;

14)     Documents regarding Wholesale Carrier Services, Inc. (Company that provided voice and data communications services to Defendants);

15)     Documents regarding communications between Defendants and email address essaessa88@yahoo.com as Defendants conducted some business on this account;

16)     Documents concerning National Sales Partners (company that uses offices at Dish

3

1 Up and has a call forwarding agreement with one of the phone numbers in question);

17)    Documents showing company organization or hierarchy;

18)    Complaint logs or records regarding Defendants' employee Rudolph DiAngelo.

The following are documents Plaintiff contends Defendants have refused to produce;

1)    List of all telephone numbers used by Defendants since 2002 and information showing which Defendants used which numbers;

2)    Documents that reflect the number of DISH customers converted to DIRECTV by month and year and the telephone number those customers used to contact Defendants;

3)    Daily and monthly DIRECTV activation reports from 2002;

4)    Daily and monthly activation reports similar to ones already produced;

5)    Documents concerning the purchase, acquisition or negotiations of any toll-free number containing the term DISH, the numbers 3474;

6)    Documents regarding sale, lease transfer or call forwarding of the phone number 888-333-DISH;

7)    Documents regarding revenue Defendants generated through their sale of DIRECTV services;

8)    All Quick Queue Dish Star Agemni (computer programs used by Defendants to store customer info) reports similar to Cancellation reports previously produced;

9)    Documents exchanged between Defendants and Go Daddy.com;

10)    Documents exchanged between Defendants and DIRECTV or a third party

4

reflecting Defendants transition to the sale of only DIRECTV equipment and services;

11)     Personnel file of Rudolph DiAngelo;

12)     Updated previous document production of documents Defendants intend to use at trial.

DISH further requests Defendants be compelled to produce all communications previously withheld as privileged regarding Defendants' phone recordings, communications equipment and systems.  Plaintiff contends Defendants produced a single email regarding the above information but refused to produce more, alleging attorney-client privilege.  Plaintiff claims by producing one entire email on the subject Defendants have waived the right to assert other emails concerning the same subject matter (i.e. the communications between Defendants and counsel regarding preservation of phone calls recordings, telecom equipment, software etc...)

Plaintiff also requests Defendants produce a privilege log and seek a Court order that depositions proceed.

**Defendants' Discovery Requests**

Defendants allege Plaintiff has failed to respond to the following requests for admissions and should be compelled accordingly.

1)     Defendants seek the disclaimers Plaintiff submitted in obtaining its Marks and Plaintiff's knowledge of Defendants' use of the phone numbers at issue and the dates Plaintiff became aware of Defendants use of the numbers.

2)     A response (admit or deny) to Defendants' Request for Admission No. 2 that Plaintiff's knew of Defendants use of the phone numbers at least in 2004.

5

3)   Admit or deny requests for admission numbers 7-13 regarding Plaintiff's prosecution of its Marks with the PTO.

4)   Admit or deny request number 14 which asked about certain events during the prosecution of its DISH trademark.

5)   Admit or deny request numbers 17-18 that Dish advertised its DISH mark standing alone prior to this litigation.

6)   Admit or deny request number 20 that other satellite retailers use phone numbers with 3474.

7)   Admit or deny request number 21 that entities other than the parties use "dish" in their business name.

Defendants further contend Plaintiff failed to adequately respond to interrogatories, specifically number 23, seeking the basis for the denial of certain requests for admission. Plaintiff merely referred Defendants to their responses to the requests for admission. Defendants also argue Plaintiff failed to produce relevant discovery in response to Defendants' Request for Production.  Specifically, Defendants obtained substantial responsive documents in response to a subpoena issued to a third party, Booyah Network, one of Plaintiff's marketing companies.  These documents pertain to the licenses Plaintiff issued to retailers, license agreements, third party infringement of the marks and Plaintiff's efforts to stop them-none of which were produced by Plaintiff.

Defendants also seek discovery on Plaintiff's pricing from 2005 to present so as to respond to Plaintiff's allegation that customers switched satellite providers due to deceptive practices of Defendants rather than pricing differences.

6

Defendants requested documents on Plaintiffs revenue, profits and subscription numbers as they relate to damages.

Defendants requested documents on customer complaints of Plaintiff and its retailers and disputes between Plaintiff and its retailers.

Defendants also requested documents on third party use of Plaintiff's Marks and telephone number and efforts Plaintiff made to protect its Marks.  Furthermore, Defendants requested documents on Plaintiff's agreements with Dish Systems which uses Plaintiff's Mark and uses 3474 in its phone number.  This goes to Plaintiff's enforcement of its Mark.

Defendants requested documents provided by Plaintiff to its retailers, including retailer agreements and communications with advertisers regarding the use of Plaintiff's Mark.

Defendants requested copies of Plaintiff's websites.

Defendants requested copies of documents regarding when Plaintiff knew of Defendants use of the phone numbers in question as they have asserted defenses of laches, waiver and acquiescence.

**Court's Analysis and Holding**

In the seventeen years I have presided as a Judge, I have never encountered such divisiveness or contentiousness.  Nor have I ever had counsel report to me that they could no longer trust the representations of opposing counsel nor engage in efforts to resolve disputes amongst themselves.  It is against this backdrop that the Court feels compelled to issue sanctions.

**Authority to Sanction**

There are many tools available to courts to ensure the orderly progress of discovery and to punish misconduct.  These derive from the Federal Rules of Civil Procedure, federal statute and

7

the Court's own inherent authority to manage its docket.

Federal Rule of Civil Procedure 37(c) states in pertinent part:

(1) ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

"Federal Rule of Civil Procedure 26(g) requires an attorney or the party personally to certify that discovery responses and objections are supported by nonfrivolous argument and are not aimed to harass, cause delay, or drive up litigation costs.  The rule requires a court to impose sanctions for any violation without 'substantial justification.'" *Jones v. Illinois Central R. Co.* 617 F.3d 843, 854 (6th Cir. 2010) citing Fed. R. Civ. P. 26.

Under Fed. R. Civ. P. 11, a party may be held responsible for sanctions due to the filing of a lawsuit for an improper purpose or for raising frivolous arguments.   However, the Sixth Circuit has expressly held "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the Court." *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997).

Federal statute also provides for sanctions based on the conduct of counsel.  Section 1927

8

of Title 28 of the U.S. Code provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Finally, a court has inherent authority to sanction bad-faith conduct in litigation. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67 (1980).

Unlike the Court's inherent authority to sanction, which requires the Court find bad faith, under 28 U.S.C. § 1927, "a finding of bad faith is not required." *Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir.1996) citing *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986). Furthermore, the Supreme Court has held that courts should refrain from sanctioning under their inherent authority when a statutory provision or relevant portion of the federal rules applies. *Chambers,* 501 at 33.

Rule 37 expressly contemplates sanctions when a party fails to provide information as required under Rule 26(a) or (e). Rule 26(a) requires "a copy-or description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment."

Rule 26(e) states "a party who has made a disclosure under Rule 26(a)-or who has responded to an interrogatory , request for production, or request for admission-must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in

writing;
(B) or as ordered by the court.

In light of the above history of the case and for the following reasons, the Court finds sanctions are warranted under the discovery rules and the Court's inherent authority.

**Joint sanctionable conduct by both sides**

**Failure to appear at the hearing**

The Court ordered all counsel and parties who proffered affidavits to appear at the hearing.  Plaintiff's patent counsel Max Gratton, proffered an affidavit on the discovery issues as did Defendants' representative Alisha Pickering.  Both failed to appear, although Pickering was contacted during the hearing and eventually offered testimony.  No sanctions will issue since the Court considers this a "wash."

**Failure to depose Firas Essa**

Firas Essa, a principal of Fun Dish, Inc. was scheduled for deposition numerous times.  According to the parties' testimony at the hearing, the first time Essa appeared he was unable to offer much in the way of testimony due to a criminal matter that limited his testimony.  The next time he was scheduled for deposition, Essa withdrew due to business concerns that demanded his immediate attention.  After that, Essa was again scheduled for deposition but, due to Defendants' counsel, Ms. Handler's, medical emergency, the deposition was cancelled.  Finally, and most recently, Essa was scheduled for deposition but shortly before the date of the deposition, Plaintiff filed a Motion for Leave to Amend its Complaint, adding additional claims.  Defendants' counsel determined the deposition could not go forward, in spite of Plaintiff's counsel's offer that no questions would be directed to the newly added claims.

10

The Court finds shared blame for failing to depose Essa.  Due to Essa's last minute decision to attend to a pressing business matter, Plaintiff is entitled to its costs for the cancellation and the Court awards Plaintiff's reasonable costs incurred as a result of the cancellation.  Although Essa's decision to cancel is certainly understandable, it does not follow that there should be no consequences.  He chose, in effect, the lesser of two evils.  Still, it was his choice.

The Court finds no sanctionable conduct for the cancellation due to Handler's medical emergency.

The Court finds sanctionable Plaintiff's Motion for Leave to Amend its Complaint in violation of the Court's April 23, 2009 Order prohibiting any further amendments.  This Order was issued upon agreement by counsel that if the Court permitted a Third Amended Complaint no further amendments would be sought or granted.  On this issue, Defendant's counsel, Mr. Glickman's recollection about this conversation in front of the Court is correct.  Due to Plaintiff's violating the Order, Defendant was justified in not appearing for the deposition in light of his concerns that he would be unprepared to discuss the new claims.  The parties' respective, proposed accommodations did not erase the fact that Plaintiff violated the clear order of the Court and the Court finds that Defendant's counsel's concerns about trusting opposing counsel were warranted. Therefore, Defendant is entitled to the reasonable costs it incurred as a result of Plaintiff filing the Motion for Leave to Amend the Complaint.

Having determined the appropriate sanctions for failing to depose Essa, the Court orders Defendant to make Firas Essa available for deposition on or before October 20, 2012.  The deposition will be conducted in the greater Cleveland, Ohio area.  Costs for the deposition will be

11

governed by the Federal Civil Rules of Procedure.

**Plaintiff's Sanctionable Conduct**

The Court finds Plaintiff engaged in sanctionable conduct by disregarding the Court's explicit order that no further amendments to the Complaint would be permitted as described above.  The Court further finds Plaintiff  failed to provide a suitable representative to attest to the discovery issues presented in the August 2011 briefs.  In its Order of February 15, 2012, the Court ordered affidavits of the "appropriate party representatives with knowledge of the discovery requested..."  While Defendant complied and produced the affidavit of Alisha Pickering, Director of Finance and Development of Fun Dish, Inc., Plaintiff produced affidavits of a paralegal and a member, but not an officer of, Dish Network's Human Resources Department, who was also a paralegal.  While Pickering testified that much of the discovery sought was under her care and/or control, Plaintiff's party representative affiants did not hold such positions.  This presented additional problems since their affidavits were required to be based on their personal knowledge yet, the Plaintiff's affiants' affidavits were replete with language such as " I have been informed and believe," or "It is my understanding," which hearsay statements were stated at least forty-seven times in Ms. Berridge's affidavit.  The Court finds that Plaintiff's production of affiants without any personal knowledge of the discovery violated the Court's Order of February 15, 2012.

Furthermore, Plaintiff's request for 1.3 million recordings, (although unconvincingly denied by Ms. Ricketts at the hearing) averaging several minutes long, and ten years worth of electronically stored data, is unduly burdensome to Defendant and would be impossible for Plaintiff to consider or even listen to and appears to the Court to be nothing more than an attempt

to bury Defendant by such burdensome production.

**SHVERA**

Regarding these recordings, the parties have represented that 47 U.S.C. § 338, the Satellite Home Viewers Extension and Reauthorization Act ("SHVERA") prevents disclosure of confidential customer information and is a roadblock that must be addressed prior to the exchange of discovery implicating the Act.  The  Court finds that SHVERA, at 47 U.S.C. § 338(i)(4)(A)and(B), requires that, before disclosing subscribers' confidential, personally identifiable information, the party holding such subscriber information must provide the subscriber notice of a court order requiring such disclosure to which a subscriber may object. While Plaintiff contends Defendants' records are not governed by SHVERA since Defendants are not satellite carriers, the Court holds that based on the sworn testimony of Defendants' counsel that the customer recordings sought by Dish are recordings of customers of a satellite carrier and, given the potential liability imposed by the statute for failure to abide by its requirements, SHVERA governs the production of the recordings.

Given the sheer number and scope of the Defendants' recordings at issue, and given the size and scope of SHVERA protected materials possessed by Dish and sought by Defendant, the Court will appoint a Special Master to oversee the notice and objection process.   The Court further finds that a Special Master is needed to oversee the discovery in this matter, to resolve the inevitable disputes of the parties and to ensure discovery proceeds in a timely manner in compliance with all federal rules and orders of the Court.  As a sanction for discovery abuses and violations of this Court's orders, both parties shall bear the costs of the Special Master. However, since the Court finds Plaintiff has engaged in the greater sanctionable conduct, which

13

the Court characterizes as a "bury with litigation" approach,  Plaintiff shall bear a larger proportion of the costs of the Special Master.  The Special Master's fees shall be paid by the parties with Plaintiff paying seventy-five percent of the cost and Defendants paying twenty-five percent of the costs.  This is a sanction that is within the parties own control.  Mutual cooperation and compliance will necessarily keep the sanctionable costs low.  Further obstruction and gamesmanship will drive the costs higher.

The Court will issue a separate order upon appointing a suitable Special Master with no conflicts.  The order will address the Special Master's authority, duties, and powers and any procedures the parties shall be obligated to follow.  Such duties shall include the aforementioned issues presented by the parties, including presiding over depositions, addressing the sufficiency of interrogatory responses and resolving disputes as they arise.  The Special Master will also review and recommend the parties' reasonable expenses sought as a result of this Order.

Finally, the Court orders Defendants to immediately provide Plaintiff with the recordings of those customers of whom Plaintiff has provided written consents for the production of the recordings.  The parties are also reminded that the sole discovery issues presently pending are those addressed above as enumerated in the parties' August 2011 briefs.  All prior motions and discovery issues were denied as moot in the Court's Order of August 16, 2011.  Since Plaintiff has requested and Defendants do not object, the Court orders Defendants to produce a privilege log.  Defendant is also ordered to file a status report with the Court, no later than October 5, 2012, on the progress made towards recovering lost or destroyed recordings.

IT IS SO ORDERED.


s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  September 20, 2012