**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **DISH NETWORK, LLC.,** | ) | **CASE NO.1:08CV1540** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **FUN DISH, INC.,ET AL.,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Plaintiff, Dish Network, LLC's Motion for Partial Summary Judgment (ECF # 378). For the following reasons, the Court grants, in part, and denies, in part, Plaintiff's Motions.

Plaintiff's Third Amended Complaint alleges a number of claims against Defendants Fun Dish, Inc.(an Ohio corporation that acquires and manages toll free numbers for other companies and acts as a pass through for credit card charges for Fun Dish of Florida, Inc.), Fun Dish of Florida, Inc. (a Florida corp. with its principal place of business in Florida and current owner of the rights to allegedly infringing phone numbers at issue in this suit), and Dish 1 Up Satellite, Inc., an Ohio corporation with its principal place of business in Ohio and a DirecTV retailer. DirecTV is a direct competitor of Dish Network in the Direct Broadcast

Satellite business.

According to Plaintiff's Third Amended Complaint, Plaintiff's primary customer service number is 1-800-333-DISH (3474).  Defendants use the numbers 1-888-333- 3474 and 1-866-333-3474 along with several additional numbers containing the alphanumeric DISH trademark embodied in the last four digits 3474.  The heart of Plaintiff's Complaint is that Defendants are using these confusingly similar numbers to ensnare Plaintiff's customers attempting to reach Plaintiff via its customer service number but misdial and reach Defendants.  Defendants then siphon off Plaintiff's customers using misrepresentations and sign them up for DirecTV.  Plaintiff's Third Amended Complaint alleges Unfair Competition under the Lanham Act against Dish 1 Up, Inc. and Fun Dish, Inc.; Deceptive Trade Practices in violation of Ohio's Deceptive Trade Practices Act against Dish 1 Up, Inc., and Fun Dish, Inc.; Common Law Unfair Competition against Dish 1 Up, Inc. and Fun Dish, Inc.; Two Counts of Common Law Trademark Infringement and Trade Name Infringement against Dish 1 Up, Inc. and Fun Dish, Inc.; Trademark Infringement under the Lanham Act against Dish 1 Up, Inc., and Fun Dish, Inc.; Trademark Infringement under the Lanham Act against Dish 1 Up, Inc., and Fun Dish  of Florida, Inc.; and Common Law Infringement against Dish 1 Up, Inc., and Fun Dish of Florida, Inc.

**<u>Procedural History</u>**

This case was originally filed in June 2008.   Since its filing, there were several amended complaints due to the difficulty in determining the correct defendants.  There was a motion for preliminary injunction, a motion to amend and several stipulations and motions to dismiss that the parties filed and then withdrew due to conferences, agreed upon undertakings

2

and other matters.  There have been multiple discovery disputes referred to a Magistrate Judge. A special master was appointed due to the parties inability to work cooperatively on discovery.  Counsel have withdrawn and been added.  The Court held oral arguments on several motions.  The parties requested a stay on ruling pending settlement discussions, which did not succeed.  The Court dismissed counts Eight and Ten of Defendants' Amended Counterclaim and denied dismissal of a third count in a December 2010 ruling.

### Plaintiff's Motion for Partial Summary Judgment

According to Plaintiff, Defendants sell satellite television services for DirecTV, the primary competitor of Plaintiff; however, from 2001 to 2007 Defendant Dish 1 Up was also a retailer for Plaintiff.  In 2004, when Defendants acquired the 888 number, they began directing customers to DirecTV.  In fact, according to Plaintiff, Defendants intentionally acquired numbers that were likely to be misdialed by Plaintiff's customers.  For example, Plaintiff owns the number 800-333-3474 and Defendants purchased the numbers 888-333-3474 and 866-333-3474.  Plaintiff contends that from 2007 to 2008 roughly 90% of the calls Defendants received on the 888 number were from Plaintiff's customers intending to call Plaintiff.  Defendants now own the rights to several additional variations of the number at issue.

Plaintiff alleges that Defendants know that the majority of callers on the 888 and 866 numbers are DISH customers intending to call Plaintiff but mistakenly misdial Defendants' numbers.  Defendants then prey on the customer confusion, training their agents to convert these confused customers to DirecTV through misrepresentation.

Plaintiff further alleges that Defendants continued to use Plaintiff's trademarks on

their website up until 2009, well after they were terminated as a retailer in 2007 and were required to stop using Plaintiff's trademarks at that time.

Based on the above conduct, Plaintiff contends it is entitled to summary judgment on its claims for violation of the Lanham Act Section 43(a) (Count I); violation of Ohio's Deceptive Trade Practices Act (Count II), Unfair Competition under Ohio common law (Count III); and Trademark and Trade Name Infringement under the Trademark Act of 1946 and Ohio common law (Counts V and VI).

Concerning its Unfair Competition claims brought under federal and Ohio law, Plaintiff argues these claims do not require use of Plaintiff's trademark in order to state a claim.  Instead, unfair competition has been defined more broadly as:

> A term which may be applied generally to all dishonest or fraudulent rivalry in trade and commerce, but is particularly applied to the practice of endeavoring to substitute one's own goods or products in the markets for those of another, having an established reputation and extensive sale, by means of imitating or counterfeiting the name, title, size, shape, or distinctive peculiarities of the article, or the shape, color, label, wrapper, or general appearance of the package, or other such simulations, the imitation being carried far enough to mislead the general public or deceive an unwary purchaser, and yet not amounting to an absolute counterfeit or to the infringement of a trademark or trade-name.

> *Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.* 25 F.3d 332, 336 (6th Cir. 1994).

Plaintiff contends Defendants' alleged practice of misrepresenting themselves as Plaintiff and then directing Plaintiff's customers to Defendants' client, DirecTV, constitutes unfair competition.  Plaintiff offers the testimonies of a number of its customers who mistakenly called Defendants only to be told they had contacted Plaintiff and have their service switched to DirecTV.  Plaintiff alleges these customer testimonies are  sufficient

4

evidence of unfair competition to warrant summary judgment.   Plaintiff's Lanham Act Unfair Competition claim arguments mirror its arguments under Ohio's Deceptive Trade Practices Act common law claims and under controlling precedent these claims are analyzed similarly.

Lastly, Plaintiff contends it is entitled to summary judgment on its trademark violation claims because Defendants continued to use Plaintiff's trademarks after Plaintiff cancelled its retailer agreement with Defendants in 2007.  Defendants IT Manager admitted Plaintiff's trademarks were not removed from Defendants' website until 2009.

## LAW AND ANALYSIS

### Standard of Review

A summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  See Fed. R. Civ. P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to

meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex,* 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Plaintiff's Motion for Partial Summary Judgment on Count I of its Third Amended Complaint for Violation of the Lanham Act and Ohio Common Law Unfair Competition Against Dish 1 Up and Fun Dish, Inc.,**

According to Plaintiff, Defendants' business practices violate both federal and Ohio state law. Plaintiff alleges specifically that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125 which reads:

(a) Civil action

6

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial
 activities...

These specific practices include:  falsely identifying themselves as DISH Network, intentionally using phone numbers similar to Plaintiff's and relying on misdials of customers attempting to contact Dish in order to switch Dish customers to its competitor DirecTV. According to Plaintiff, the attempted switch uses misrepresentations and preying upon customer confusion - i.e. customers belief that they are speaking to a Dish representative. Plaintiff contends that Defendants rely on customer confusion to take customers from Plaintiff.  Fun Dish's training manual acknowledges that "90% of the calls we receive are meaning to call Dish Network.  This is a prime opportunity to turn a wrong number into a sale."  (Fun Dish Sales Agent Training Manual, ECF 378-5 pg 25).

Plaintiff contends Defendants do not stop there, rather, once a Dish customer mistakenly misdials Defendants, Defendants agents/employees perpetuate the customers mistaken belief that they have reached Dish.  Dish offers deposition testimony and declarations of Dish customers who mistakenly contacted Defendants using Defendants' confusingly similar phone numbers.  According to Dish customer Robin Probst, she attempted

7

to contact Dish to fix a problem but mistakenly dialed Defendant Dish 1 Up.   Upon

questioning, Probst testified as follows:

> Q.  When you were on the call with this sales agent, did you provide the sales
> agent with any of your personal information?
>
> A.  Yes, I did.  Obviously my name, my address and my credit card number.
>
> Q. And you did that under the assumption that you were speaking with a Dish
> representative?
>
> A.  Yes.  And that -- you know how sometimes -- I was led to believe that you
> know how sometimes even though you are Dish, maybe you've taken on
> another satellite type of thing, so within -- within your company, you know,
> you might have bought some other one, so let's try this instead, kind of thing.
> That was the way I was led to believe at the time.
>
> Q.  Were you led to believe that by the sales representative that answered your
> call?
>
> A.  Yeah.  Yeah.  I mean, when I said, "Aren't you Dish?" "Well, their phones
>  roll over to us in the evening."

(Robin Probst Depo (ECF 375-9 pg. 15).

John Kennedy, a Dish representative, testified to a similar experience when he

mistakenly dialed Defendants' number thinking he was calling Dish.

> Q. How was Fun Dish using the term "DISH" or "DISH Network"?
>
> A. My understanding is that -- and I actually had this from personal
> experience, that when you called 1-888-333-DISH - I did this -- this is ironic --
> a couple years ago after the suit had actually been filed. I called it accidentally
> and told them I was trying to do something with my DISH receiver, and they
> represented that they were DISH, and then they tried to sell me DirecTV. So
> my understanding
>
> Q. Who did that, sir?
>
> A. I don't remember the person's name.
>
> Q. I'm not asking the person in the company.

8

A. It was the people who had the phone  number 1-888-333-DISH.

Q. Do you know what company was answering that telephone?

A. I do know now it's Fun Dish or DISH 1 Up, but at the time I didn't know who was answering the phone. I thought I was calling DISH Network.

(John Kennedy depo. ECF # 373-4 pg. 27-28).

Dish customer Jon Hunter stated at his deposition that he thought he was calling Dish Network but mistakenly dialed Defendants.  When a sales agent offered him the NFL package, Hunter questioned how they could offer him the package "because I thought it was only on DirecTV, and the statement they made was that they [Dish and DirecTV] were merging."  (Hunter Depo. ECF # 375-7 at 36 and 45).

Another customer, Cindy Jenkins, also related on deposition that when she mistakenly dialed Defendants, thinking it was Dish, she was told that the two companies were one in the same.  (Jenkins depo. ECF # 376-2, page 18).  See also declaration of Michelle Bottino ("At the end of the telephone call, after I provided all of my personal information, the woman told me that my service would now be through DIRECTV.  I explained to the woman that I did not want DIRECTV. She replied that DISH and DIRECTV were the same thing.").  (ECF # 376-5, para. 4).

According to Plaintiff, these are but a small sample of the widespread deceptive acts Defendants employed to convert Dish customers to DirecTV.  The full extent of the abuse cannot be ascertained because Defendants destroyed, lost and/or failed to preserve millions of recordings of customer calls.

Defendants paint a very different picture.  Defendants contend that applicable Sixth Circuit law does not proscribe the purchase and use of telephone numbers similar to ones used

by a competitor when the confusion is not created by the purchaser because it does not use the DISH trademark in relation to its similar phone numbers.  Defendants argue that their use of similar phone numbers is not a Lanham Act violation because Defendants do not advertise their phone numbers using a phrase similar to 1-800 333-DISH (3474).  Instead, Defendants use prefixes 888, 866, 877, and 855 333-3474.  Thus, according to Defendants, they do not cause the confusion but trade on the confusion already existing due to similarities of numbers, not trademarks.

Defendants further argue that they use scripts for their sales representatives, none of which contain any misrepresentations and clearly disclose that they are selling DirecTV services.

Third, Defendants argue that many of the calls meant for Plaintiff were intending to place complaints about Dish services, prices, products, etc... It is not unlawful for Defendants to pitch a competitor's products to dissatisfied customers of Plaintiff.   Defendants cite to the deposition testimony of Robin Probst (ECF 341-4 pgs 46, 51, 52) and others who switched to DirecTV because it was a better deal or because DirecTV offered channels not available on Dish.  Regardless, whether they mistakenly dialed Defendants, the customers ultimately switched to DirecTV not because of deception but simply because it offered better services or prices.

Defendants also point to the deposition of John Hunter wherein he could not recall if the Defendants' sales representative identified themself as working for Dish.  (ECF # 341-8, pg. 20).

Defendants offer additional evidence that after a customer agreed to switch, they were

transferred to a second customer service representative who confirmed that the customer was speaking to a DirecTV representative.  Thus, even if there was some initial confusion by the customer as to whom they were talking , no switch in service could occur without an express representation by Defendants that they were a DirecTV retailer.

Defendants also offer the declaration of Alisha Pickering, Director of Finance and Development for Dish 1 Up since 2008.  (ECF # 393-31).  In her declaration, Pickering asserts that employees are expressly prohibited from representing that they are affiliated with Dish.  They are given scripts that contain no misrepresentations, and are provided sales information sheets expressly prohibiting them from making such misrepresentations.

Defendants further contend that any employee found making a misrepresentation was first written up and, if the conduct persisted, was terminated.  In fact, Defendants point out that Plaintiff conducted a number of "sting" operations wherein they investigated Defendants representations to customers.  These investigations in 2004, 2007 and 2008-2011 failed to find any misleading conduct by Defendants' employees.

Finally, Defendants argue that the few transcripts of calls cited by Plaintiff showing misrepresentations occurred through a third party, Goodbay Technologies, who was a subcontractor to BYBB, a company that Dish 1 Up employed to handle overflow calls after hours.  Goodbay never worked for Dish 1 Up according to Defendants.

Having reviewed the briefs, evidence and considering the arguments made at the oral arguments hearing, the Court finds Plaintiff has demonstrated that Defendants made material misrepresentations to customers causing confusion as to the affiliation.  Plaintiff has shown by the testimony of customers  Probst, Hunter, Jenkins, Bottino and Dish representative

11

Kennedy that Defendants made false representations as to their affiliation with Plaintiff in order to sell a competitor's product to Dish customers.  This deceptive practice is further evidenced by the transcriptions of customer calls to Defendants wherein Defendants' representatives openly represent themselves as Dish agents.  See (ECF #378-10, 378-31).

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of [trade]marks' and 'to protect persons engaged in ... commerce against unfair competition.' " *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 28–29, (2003) (quoting 15 U.S.C. § 1127).  Unfair competition is defined under the Lanham Act as when a person "on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion ....'" 15 U.S.C. § 1125(a)(1)(A).  "Unlike a claim of trademark infringement, a claim of unfair competition does not require the use of the plaintiff's trademark."  *Best v. AT & T Mobility, LLC.,* No. 1:12CV564, 2015 WL 1125539, 5 (S.D.Ohio, March 12, 2015) citing *Bird v. Parsons,* 289 F.3d 865, 877 (6th Cir.2002).  "Generally speaking, the key question in cases where a plaintiff alleges trademark infringement and unfair competition is whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services."  *Id.*  (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997).  A statement that is "affirmatively misleading, partially incorrect, or untrue as a result of failure to disclose a material fact [is actionable under § 43(a) ]."  *Janda v. Riley-Meggs Industries, Inc.* 764 F.Supp. 1223, 1228 (E.D.Mich.,1991) quoting *U.S. Healthcare v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 921 (3d Cir.1990).

Congress has recognized that § 43(a)(1) "has been widely interpreted as creating, in essence, a federal law of unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, n. 18, (quoting S.Rep. No. 100-515, p. 40 (1988)).

Section 43(a) of the Lanham Act encompasses two different claims that can be brought. Plaintiffs do not identify, in their Third Amended Complaint, whether they are alleging that Defendants violated subparagraph (A), the false association prong, or subparagraph (B), the false advertising prong, of the Lanham Act.  See *Williamson v. Rexam Beverage Can Co.* 497 F.Supp.2d 900, 909 (S.D.Ohio,2007) (describing the distinct causes of action under Section 43(a) of the Lanham Act.

Here, Plaintiff does not allege any false representation in connection to advertisement or promotion.  Therefore, the Court will analyze Plaintiff's Lanham Act claim under the Section A for false origin and passing off.

Under the Lanham Act, "passing off ... occurs when a producer misrepresents his own goods or services as someone else's"; "reverse passing off" occurs when a "producer misrepresents someone else's goods or services as his own." *Dastar Corp.,*  539 U.S. at 27 n. As discussed above, Plaintiff has established that Defendants repeatedly made false representations of fact as to Defendants identity, affiliation and the origin of the services it was selling  to Plaintiff's customers who had mistakenly dialed one of Defendants' phone numbers substantially similar to Plaintiff's.  These false representations, as described by deponents cited *supra*, include that Plaintiff and DirecTV are merging, that Plaintiff's customer service number rolls over to Defendants' at night, and that Plaintiff and DirecTV are the same company.  This was done to deceive the customer into purchasing a competitor's

product.   By using similar numbers to Plaintiff's, then misrepresenting their affiliation to Plaintiff, Defendants' actions furthered the confusion customers already had concerning the similar numbers and deceived customers as to the affiliation, connection or association with Plaintiff.

The deposition testimony, declarations and transcribed calls evidence additional misrepresentations, falsely conveying to customers they have reached a DISH representative: including pretending to remotely evaluate the reason for a DISH customers poor reception or lack of picture, pretending to look at the customer's DISH account and pretending to provide DISH technical support; all of which unequivocally supports the conclusion that Defendants have engaged in deceptive acts proscribed by the Lanham Act.

These same misrepresentations clearly caused confusion and deceived customers into thinking they were dealing with a DISH representative.  Such actual confusion must be demonstrated by a party seeking damages for Lanham Act violations.  "Indeed, a plaintiff must show actual consumer confusion, as opposed to the mere likelihood of consumer confusion, in order to recover monetary damages under § 43(a)."  *Shonac Corp. v. AMKO Intern., Inc.* 763 F.Supp. 919, 934 (S.D.Ohio,1991).   Plaintiff has shown by uncontested testimony that consumers were actually confused by Defendants misrepresentations.  This is supported by the testimony of the customers and call transcriptions showing customers confusion as to whom they were speaking, and the origin of the product and/or service they were purchasing.   While it may be true that Defendants did not cause the confusion by simply using similar phone numbers, their misrepresentations to Plaintiff's customers unequivocally did as they preyed on the inherent confusion created by use of similar phone numbers and

14

then created confusion concerning the origin of the services they were selling by making material misrepresentations as to their affiliation in order to switch customers to Plaintiff's competitor.

Defendants argue that many of the misrepresentations occurred from a third party call center located in India that was not hired by Defendants but was instead hired by a subcontractor to Defendants.  The Court finds this argument unavailing because it is undisputed that Goodbay was authorized, albeit indirectly, by Dish 1 Up to handle overflow calls to the allegedly infringing numbers and Dish 1 Up provided training and sales materials through BYBB.   Dish 1 Up does not aver that they did not receive compensation for any sales made by Goodbay employees.  Thus, Defendants outsourced their own confusingly similar phone numbers to  handle overflow calls with the intent of pitching DirecTV products to Dish customers for financial gain.  Because it is undisputed that Goodbay sales reps were authorized to represent Defendants in handling overflow calls and Defendants received compensation for sales achieved by Goodbay representatives using Defendants phone numbers, Defendants cannot disclaim the misrepresentations made by these authorized agents. Simply put, Defendants cannot accept the benefits without the burdens.

**Ohio Deceptive Trade Practices Act and Ohio Common Law Unfair Competition**

Plaintiff further contends it is entitled to summary judgment on its claim for violation of Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.02, because Defendants have violated the following provisions:

> (1) Passes off goods or services as those of another;
> (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3) Causes likelihood of confusion or misunderstanding as to affiliation,

15

connection, or association with, or certification by, another;
 connection with, particular goods or services.
(7) Represents that goods or services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities that they do not have
or that a person has a sponsorship, approval, status, affiliation, or connection
that the person does not have;
(10) Disparages the goods, services, or business of another by false
representation of fact;
(11) Advertises goods or services with intent not to sell them as advertised;
(12) Makes false statements of fact concerning the reasons for, existence of, or
amounts of price reductions.

Plaintiff's Lanham Act, Ohio Deceptive Trade Practices Act and Ohio Unfair

Competition common law claim are all similarly analyzed.  See *Efficiency, Inc. v. Lubecore*

*Int'l., Inc.,* 730 F.3d 494, 520 (6th Cir.2013)    Therefore, if a party can show unfair

competition under the Lanham Act they will also satisfy the proof requirements for violation

of the ODTPA and Ohio common law Unfair Competition claims. "Where claims are made

under the Ohio common law and [the ODTPA], Ohio courts are to apply essentially the same

analysis as that applied in assessing the law of unfair competition under the federal statutes."

*Best v. AT & T Mobility, LLC,* No. 1:12CV564,  2015 WL 1125539, 7 (S.D.Ohio, March 12,

2015).  See also *Kenneth J. Majcen & Assoc. v. Phoenix Assoc., Inc.,* No. 76454, 2001 WL

60038, at *8 (Ohio Ct.App. Jan. 1, 2001) (noting that a single act of misleading a customer as

to the source of goods "causes sufficient likelihood of confusion or misunderstanding to

constitute a deceptive trade practice").  *Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC*

947 F.Supp.2d 841, 865 (S.D. Ohio, 2013).

While Plaintiff has shown by undisputed evidence that Defendants made false

representations about the origin of its services and products and has shown customers were

actually confused, they have not demonstrated proximate cause that Defendants' acts caused

16

them injury.  "The § 1125(a) cause of action extends to plaintiffs who fall within the zone of interests protected by that statute and whose injury was proximately caused by a violation of that statute." *Lexmark Intern., Inc. v. Static Control Components, Inc.* 134 S.Ct. 1377, 1382 (U.S., 2014).  Plaintiff offers the expert report of Vincent A. Thomas, CPA, concerning Defendants' profits as well as Dish's lost profits from the misrepresentations.  However, expert reports are not competent evidence for purposes of summary judgment.  See *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) (holding that an expert report is "unsworn and thus is hearsay, which may not be considered on a motion for summary judgment.") Plaintiff further offers financial summaries of Defendants which, without expert testimony, offer little to the Court in determining what profits of Defendants related to the misrepresentations of its employees.

Thus, Plaintiff has not shown it is entitled to summary judgment as a matter of law on liability because it fails to show that Defendants' misrepresentations proximately caused injury to Plaintiff and for liability to be proven, the claimant must demonstrate injury and that the injury was proximately caused by Defendants' acts.

**Defendants use of the Dish Network Trademark on its Website after Plaintiff Cancelled Defendants' Retail Agreement**

Plaintiff moves for summary judgment on Counts Five and Six of its Third Amended Complaint alleging Trademark Infringement under the Lanham Act § 32 and Common Law Trademark and Trade Name Infringement.  Plaintiff argues it terminated Dish 1 Up's retailer agreement and that the termination required Dish 1 Up to "immediately discontinue all use of the trademarks associated" with Plaintiff.   Defendants continued to use the *Dish Network*

17

stylized mark and *Dish Network* trade name on their website until April 2009, in violation of the Lanham Act and Ohio Common Law.

According to Plaintiff, screen captures obtained via archival sources demonstrate Defendants were still using Plaintiff's trademark and trade name in 2009.  Furthermore, the deposition of Defendants' IT Manager, Nathan Traish, supports this conclusion.  When asked by counsel when he removed Plaintiff's trademarks from Defendants' website, Traish testified he removed Plaintiff's marks at the end of 2008 or in 2009.

> Q:  After you went through and manually removed all of the Dish marks from the Dish 1 Up website, did you find that there were still some of the marks on the website?
> A:  After the last time I did, no. I believe everything was removed in 2008. Maybe it was either the end of 2008 or the beginning of 2009, somewhere in that time frame.

(Traish depo 373-6 pg. 231).

Later, in the same deposition Traish reiterated that he removed Plaintiff's trademarks from Defendants' website in 2008 or 2009.

> Q:  So looking at that same page as an example of the page that has Dish03806 and it has -- do you see the Dish logo on that page underneath, "Your credit card will not be charged at this time"?
> A:  Correct.
>
> Q:  Did you go through and manually remove all such marks?
> A: Yes.
> Q:  And the remark underneath where it says, "Schedule for an installation for Dish Network"?
> A:  Yes.
> Q:  You did that you said in 2008?
> A:   I believe it's around the end of 2008, the beginning of 2009. I don't remember exactly when.

(Traish depo ECF # 373-6).

Defendants argue the archival screen captures, purporting to be a 2009 screen capture

showing Defendants' use of Plaintiff's *Dish Network* mark, is actually a 2007 screen capture. Defendants rely on the declaration of Traish wherein he attests that there is a discrepancy between the archival screen capture and the actual website display of 2009.  According to Traish, "the date assigned by the Internet Archive applies the HTML file but not to image files linked therein." (ECF # 393-27 para. 7).  Thus, according to Traish, the 2009 date reflects the date the HTML was retrieved and archived and does not represent the website page as it existed in 2009.

While that may be true and while that on its own would present a fact issue for the trier of fact, Defendants offer no evidence contradicting Traish's own testimony that he personally removed Plaintiff's trademarks in 2008 or 2009, after Defendants' retailer agreement with Plaintiff was cancelled.  Defendants cite to Traish's declaration but that only supports Plaintiff's argument.  In his declaration, Traish affirmed that Plaintiff's trademarks were still on Defendants' website as of 2008 or 2009.  "Unfortunately, I learned sometime in 2008 that certain very small and inconspicuous references to DNW and its trademarks were not effectively removed from back pages of the site.  Upon learning this, I manually scoured the site to remove any such lingering references." (*Id.* at para. 3).  Therefore, the undisputed evidence from Defendants' own employee affirms that Defendants still displayed Plaintiff's trademarks after the cancellation of the retailer agreement.

Section 32 of the Lanham Act, 15 U.S.C. § 1114 states in pertinent part:

(1) Any person who shall, without the consent of the registrant--
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation
 of a registered mark in connection with the sale, offering for sale, distribution,
 or advertising of any goods or services on or in connection with which such use
 is likely to cause confusion, or to cause mistake, or to deceive; or

19

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

At the outset, the Court notes that Plaintiff's *Dish Network* stylized trademark is not the subject of a cancellation counterclaim by Defendants nor have Defendants challenged the validity of the trademark.

Here, the uncontested evidence demonstrates that Defendants were authorized to use Plaintiff's Dish Network trademark until November 21, 2007, when Plaintiff cancelled Defendants' right to use Plaintiff's trademarks.  The uncontested evidence from Defendants' own IT manager demonstrates Defendants continued to use Plaintiff's trademarks until at least sometime in 2008.

"In order to defeat summary judgment in a Lanham Act case alleging violations of section 32 defendants must raise a genuine issue of fact as to (1) whether their use of the trademark was without the registered owner's consent, or (2) whether their unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the product."  *U.S. Structures, Inc. v. J.P. Structures, Inc.* 130 F.3d 1185, 1188 -1189 (6th Cir. 1997); see also *Holiday Inns, Inc. v. 800 Reservation, Inc.* 86 F.3d 619, 622 -623 (6th Cir.1996).  " [P]roof of continued, unauthorized use of an original trademark by one whose

20

license to use the trademark had been terminated is sufficient to establish "likelihood of confusion."  *U.S. Structures, Inc.,* 130 F.3d at 1190.

Because the uncontested evidence establishes both elements of a Lanham Act trademark infringement action, the Court finds Plaintiff has demonstrated that Defendants violated the Lanham Act by infringing on Plaintiffs *Dish Network* trademarks.  Because the "'the same analysis applies'" when determining liability on a 'plaintiffs' [federal] trademark infringement, [federal] unfair competition, and Ohio law claims' for common law trademark infringement, unfair competition, and deceptive trade practices," Plaintiff is entitled to summary judgment on its claim for trademark infringement under Ohio common law.  *Choice Hotels Intern., Inc. v. Jagaji, Inc.*  No. 2:10CV964,  2012 WL 3929823, 6 (S.D.Ohio,Sept. 10, 2012) *quoting Victoria's Secret Stores v. Artco Equip. Co.,* 194 F.Supp.2d 704, 724 n. 8 (S.D.Ohio 2002). [1]

Therefore, for the foregoing reasons, the Court denies Plaintiff's Motion for Partial Summary Judgment on Counts I, II and III of its Third Amended Complaint but grants Summary Judgment for Plaintiff on liability for Counts V and VI of its Third Amended Complaint against Defendants Dish 1 Up and Fun Dish, Inc.

IT IS SO ORDERED.

---

[1]     In *Choice Hotels*, the Court found liability solely on Plaintiff's evidence demonstrating Defendant's unauthorized use of Plaintiff's trademarks after their license to use Plaintiff's trademarks had expired and finding confusion on the part of consumers.  The Court has not been apprised by the parties of any caselaw requiring a finding of proximate cause in order to establish liability.  Thus, Court finds a Lanham Act claim under 32(a) differs in the necessary elements to establish liability from a Lanham Act claim brought under 43(a).

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  June 11, 2015