UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| **DISH NETWORK, LLC.,** | ) | CASE NO.1:08CV1540 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| **FUN DISH, INC.,ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (ECF # 337). For the following reasons, the Court grants, in part, and denies, in part, Defendants' Motion.

Plaintiff's Third Amended Complaint alleges a number of claims against Defendants Fun Dish, Inc. (an Ohio corporation that acquires and manages toll free numbers for other companies and acts as a pass through for credit card charges for Fun Dish of Florida, Inc.), Fun Dish of Florida, Inc. (a Florida corp. with its principal place of business in Florida and current owner of the rights to allegedly infringing phone numbers at issue in this suit), and Dish 1 Up Satellite, Inc., an Ohio corporation with its principal place of business in Ohio and a DirecTV retailer. DirecTV is a direct competitor of Dish Network in the Direct Broadcast Satellite business.

According to Plaintiff's Third Amended Complaint, Plaintiff's primary customer service


number is 1-800-333-DISH (3474).  Defendants use the numbers 1-888-333- 3474 and 1-866-333-3474 along with several additional numbers containing the alphanumeric DISH embodied in the last four digits 3474.  The heart of Plaintiff's Complaint is that Defendants are using these confusingly similar numbers to ensnare Plaintiff's customers, attempting to reach Plaintiff via its customer service number but misdial and reach Defendants.  Defendants then siphon off Plaintiff's customers using misrepresentations and sign them up for DirecTV.  Plaintiff's Third Amended Complaint alleges Unfair Competition under the Lanham Act against Dish 1 Up, Inc. and Fun Dish, Inc.; Deceptive Trade Practices in violation of Ohio's Deceptive Trade Practices Act against Dish 1 Up, Inc., and Fun Dish, Inc.; Common Law Unfair Competition against Dish 1 Up, Inc. and Fun Dish, Inc.; Two Counts of Common Law Trademark Infringement and Trade Name Infringement against Dish 1 Up, Inc. and Fun Dish, Inc.; Trademark Infringement under the Lanham Act against Dish 1 Up, Inc., and Fun Dish, Inc.; Trademark Infringement under the Lanham Act against Dish 1 Up, Inc., and Fun Dish  of Florida, Inc.; and Common Law Infringement against Dish 1 Up, Inc., and Fun Dish of Florida, Inc.

Defendants' First Amended Counterclaim seeks Cancellation of Trademark Registration No. 3,440, 594 ("DISH") Pursuant to 15 U.S.C.  §§ 1064 and 1119 (Count I); Declaratory Judgment- Invalidity of Mark Under the Lanham Act (Count II); Cancellation of Trademark No. 3,264,300 ("DISH NETWORK") Under 15 U.S.C. §§ 1064 and 1119 (Count III); Cancellation of Trademark Registration ("DISH ON DEMAND") (Count IV); Refusal of Trademark Application ("DISH DIGITAL SIGNS") (Count V); Refusal of Trademark Application (DISHMARKETINGSOLUTIONS") (Count VI); Refusal of Trademark Application ("MOBILEDISH") (Count VII); Sherman Act violation (Count VIII); Common Law Unfair

Competition (Count IX); Common Law Tortious Interference with Prospective Business Advantage (Count X); and Trademark Infringement Lanham Act (Count XI). In a prior ruling, the Court dismissed Defendants' Sherman Act and Tortious Interference claims.

**Defendants' Motion for Summary Judgment**

Defendants' Motion for Summary Judgment seeks a determination by the Court that Plaintiffs' "DISH" trademark is generic or merely descriptive and lacking in secondary meaning. Defendants argue that such a finding by the Court would entitle them to summary judgment on all Plaintiff's claims and Defendants' First Amended Counterclaim. Defendants' further argue their use of telephone numbers, which include 3474, does not constitute trademark infringement or unfair competition, entitling them to summary judgment. Lastly, Defendants contend that by waiting four years to bring this action against Defendants after first learning of the alleged infringement, Defendants are entitled to summary judgment due to their affirmative defenses of laches and acquiescence.

Defendants' primary argument on summary judgment is Plaintiff's trademark of the term "DISH" is too generic and, therefore, neither valid nor protectable. Defendants argue that Plaintiff obtained the trademark in 2008 after having been denied repeatedly by the United States Patent and Trademark Office. It was only after Plaintiff introduced a survey, purporting to show that the public did not regard "Dish" to be a generic term, that the PTO granted the trademark. However, Defendants contend the survey's author represented that the survey was not intended to show the genericness of the term "Dish" and further represented that Plaintiff is misusing the survey.

Defendants further argue they began using the contested numbers years before Plaintiff

3

obtained the trademark, therefore, they cannot be liable for infringement. Also, Defendants argue that the use of frequently misdialed numbers, containing numbers that correspond alphanumerically to Plaintiff's trademark, does not violate the Lanham Act under Sixth Circuit precedent. Lastly, concerning Plaintiff's trademark infringement claims, Defendants argue Plaintiff unreasonably delayed bringing an action for years after learning of Defendants use of similar numbers, therefore, the doctrines of laches and acquiescence defeat Plaintiff's claim. Defendants claim Plaintiff knew that Defendants desired to purchase the numbers in 2003 and knew Defendants were using the numbers in 2004, yet waited until 2008 to bring suit.

Defendants also argue that Plaintiff disclaimed the term "DISH" in order to obtain a trademark for "Dish Network" as recently as 2007. In 2005, Plaintiff applied for a trademark of the term "DISH," which was repeatedly denied by the USPTO as too generic until Plaintiff introduced the survey which, as stated above, is flawed. Plaintiff allegedly began using the term "DISH"as a trademark back in 1996, but Defendants argue Plaintiff has failed to produce any such evidence. In fact, Defendants argue, Plaintiff has produced no evidence of its use of the "DISH" trademark before Defendants began using the numbers in 2004.

Defendants also point out that in 2003, Dish 1 Up learned the 888 number in question was inactive and contacted Plaintiff to discuss purchase of the number. Plaintiff informed Dish 1 Up that Plaintiff did not own the rights to the number and thereafter, Dish 1 Up leased the number. Then, in 2004, Dish 1 Up contacted Plaintiff to determine if Plaintiff wanted to buy the number from Defendant. Plaintiff indicated it was not interested in acquiring the number and that Dish 1 Up was free to have it.

Defendants do not dispute that they acquired the numbers specifically to answer misdials

to existing subscribers of Plaintiff attempting to reach Plaintiff's customer support number. However, the evidence will show Defendants did not manipulate customers or misrepresent who they were. Instead, Defendants attempted to take Plaintiff's own dissatisfied customers. Furthermore, Defendants contend they had strong policies in place to prevent any misrepresentations by employees, including scripts expressly identifying Defendants as a DirecTV retailer. Also, Defendants contend they do not advertise the allegedly infringing numbers.

Plaintiff contends its claims I, II, III and IV are not dependent upon Plaintiff's trademark telephone number but instead rely on a number of unlawful practices of Defendants including misrepresentations made by Defendants' agents to Plaintiff's customers. Therefore, regardless of whether Plaintiff's 1 800 333-DISH trademark is enforceable, Defendants are not entitled to summary judgment as a matter of law on these claims.

Furthermore, Plaintiff argues that Counts V and VI of Plaintiff's Third Amended Complaint are also not dependent on the validity of Plaintiff's DISH mark. Instead, these claims depend on Defendants' use of the DISH NETWORK trade name and stylized mark on their website. Since the stylized mark is not the subject of a cancellation claim by Defendants, Defendants are not entitled to summary judgment on Counts V and VI.

In addition, Plaintiff contends its Trademark Infringement claims at Counts VII and VIII of its Third Amended Complaint are not limited to the use of 1 800 333 3474 but include infringement claims on a number of other trademarks not subject to Defendants' validity challenges.

Plaintiff also opposes Defendants' argument that its DISH mark is invalid, citing its

presumption of validity under the law, its evidence of the marks distinctiveness and nongenericness and its attaining secondary meaning before Defendants' use of the similar phone numbers.

Lastly, Plaintiff disputes that it unduly delayed bringing suit as its claims fall within the applicable statute of limitations, Dish 1 Up was an authorized retailer for Plaintiff until 2007 and any undue delay was caused by Defendant Fun Dish's own failure to identify their association with Dish 1 Up until 2008.

## LAW AND ANALYSIS

### Standard of Review

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  See Fed. R. Civ. P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not

rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex,* 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Use of Similar Telephone Numbers Containing numbers similar to those in an Alphanumeric Trademark is not Infringement Under Applicable Federal and State Law**

Defendants contend that applicable Sixth Circuit law holds that a competitor's use of phone numbers similar to a registered trademark holder's vanity number does not constitute trademark infringement. Defendant's cite to the Sixth Circuit case of *Holiday Inns, Inc., v. 800 Reservation, Inc.,* 86 F.3d 619 (6th Cir. 1996). In *Holiday Inns*, plaintiff hotel chain brought trademark infringement and unfair competition claims under the Lanham Act against a defendant reservation service that used a 1-800 number frequently misdialed by the hotel chain's

7

customers.  Plaintiff Holiday Inns owned a trademark to the vanity number 1-800-HOLIDAY.  Defendants included Call Management Systems, Inc., a consulting firm that obtained and serviced 1-800 numbers for businesses and 800 Reservations, Inc., a reservation agency that makes hotel reservations for customers from a number of hotel chains, which included Holiday Inns.  1-800-HOLIDAY translates numerically to 1-800-465-4329.   Defendant Call Management decided to acquire 1-800-405-4329 relying on customers mistaking the letter "O" in HOLIDAY for the number zero.  Holiday Inns filed suit against defendants and moved to enjoin defendants from using the similar number.  The district court granted the injunction prohibiting defendants from activating or operating the 405 number along with other monetary relief.

On appeal the Sixth Circuit reversed the district court's ruling.  The court was persuaded by the fact that defendants minimally advertised or promoted their number.  The court further determined that a party's ownership of a trademarked vanity number does not permit it to claim rights to numbers similar to but not identical to the vanity number.  The Court further determined that there was no Lanham Act violation under Sections 32 or 43(a) for trademark infringement when an alleged infringer never uses the trademarked vanity number but only uses a similar phone number not containing the trademarked name.

Finally, the Sixth Circuit determined that the acquisition of a number similar to a trademarked vanity number does not infringe because it does not ***cause*** the confusion but instead merely takes advantage of confusion that already exists amongst the misdialing public.  Without a use of Plaintiff's mark or deceptively similar copy of a mark Defendants cannot be liable for trademark infringement for using a telephone number similar to the trademarked vanity number.

Plaintiff argues that the Sixth Circuit has narrowed the *Holiday Inns* holding in a subsequent case, *Taubman Co. v. Webfeats*, 319 F.3d 770, (6th Cir. 2003).  In *Taubman*, the Sixth Circuit determined there was no infringement by a website domain name registrant who obtained and registered several domain names that contained plaintiff's trademarks for "Taubman" and "The Shops at Willow Bend."   The Sixth Circuit reversed the lower court's grant of injunctions against defendant.  The Sixth Circuit determined that defendant's ownership of the domain names was not for use in advertising and did not cause a likelihood of confusion.

According to Plaintiff, the *Taubman* decision relied heavily on the fact that defendant had a disclaimer on his site clearly indicating he was not affiliated with the trademark owner.  No such disclaimer is offered by Defendants in this case.

While the *Taubman* case does state that the *Holiday Inns* decision was based partly on the fact that defendants disclaimed affiliation with plaintiff via a recorded message, this issue was not dispositive.  As the Court reads *Holiday Inns*, the Sixth Circuit relied primarily on the fact that defendant did not use Plaintiff's mark but instead used a number similar to the trademarked vanity number.  The Court further relied on the fact that defendant did not advertise the similar numbers, thus, they did not use plaintiff's trademark.   *Taubman* clearly acknowledges this holding and unequivocally states that such a finding is fatal to a trademark infringement claim based on similar phone numbers.  ("In *Holiday Inns,* the defendant did not actually use the plaintiff's trademark, "Holiday," but used the most common "misspelling" of it. Accordingly, we also found no infringement in *Holiday Inns* because there was no "use" of the plaintiff's mark.")  *Taubman* Co., 319 F.3d at 777.

Here, the undisputed evidence demonstrates Defendants did not advertise the numbers at

9

issue. In her declaration attached at (ECF # 338-2 para 6) Alisha Pickering, Director of Financing and Development for Dish 1 Up, attests that "None of the Defendants have ever advertised the Numbers." Plaintiff does not point the Court any evidence contradicting this assertion by Defendants.

> Section 32 of the Lanham Act, 15 U.S.C. § 1114, states in pertinent part:
>
> (1) Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125 reads:

(a) Civil action

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial
> activities...

"In order to avoid summary judgment in a Lanham Act case alleging violations of § 32 (15 U.S.C. § 1114), and § 43 ( 15 U.S.C. § 1125),  the nonmoving party must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement."  *Holiday Inns, Inc.,*  86 F.3d at 622 -623.   A Lanham Act trademark infringement violation under Section 32 requires "use in commerce" of a "reproduction, counterfeit, copy, or colorable imitation of a registered mark."  Setion 43(a) requires use of a word, term, name, symbol, or device... which is likely to cause confusion."

Here, Defendants did not use the word "DISH" in connection with the use of their similar numbers, but instead merely own numbers similar to Plaintiff's registered trademark in 1-800-333-DISH.  A fair reading of *Holiday Inns* supports the Court's conclusion that mere ownership of similar numbers, without advertisement and without use of Plaintiff's "DISH" trademark in advertising Defendants' similar numbers, does not constitute a Lanham Act violation under either Section 32 or 43(a).  As *Holiday Inns* clearly held, such ownership of similar numbers by a defendant does not cause confusion because the confusion already exists.  "The defendants in this case never *used* Holiday Inns's trademark nor any facsimile of Holiday Inns's marks.  Moreover, the defendants did not *create* any confusion; the confusion already existed among the misdialing public." *Id.* at 625.  Therefore, because the facts of this case mirror those in *Holiday Inns,* the Court grants summary judgment for Defendants on Count VII  of Plaintiff's Third

Amended Complaint.

Because trademark infringement claims under the Lanham Act apply the same analysis to Ohio Common Law infringement claims, Defendants are entitled to summary judgment on Count VIII of Plaintiff's Third Amended Complaint for trademark infringement under Ohio common law. "Because trademark claims under Ohio law follow the same analysis as those under the Lanham Act, our discussion of the federal trademark claims will therefore encompass the state trademark claims as well"). *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 626 n. 2 (6th Cir.2002).

Plaintiff argues its claim in Count VIII encompasses more than Defendants' infringement of the "DISH" trademarked vanity number. However, Count VIII of Plaintiff's Third Amended Complaint depends upon the acquisition and use of the similar phone numbers. Count VIII of Plaintiff's Third Amended Complaint alleges:

> 66. Dish 1 Up and Fun Dish of Florida are unfairly trading on and appropriating the reputation and good will of DISH Network's trademarks for their own commercial gain by their acquisition and use of the vanity number 333-DISH (3474).
>
> 67. Upon information and belief, Dish 1 Up and Fun Dish of Florida's adoption and use of colorable imitations of DISH Networks trademarks was and is deliberate, intentional, knowing and willful and done with the intent to confuse, mislead, or deceive the public, thereby causing Defendant to profit to an extent which it would not otherwise enjoy.
>
> 68. By reason of the acts of Dish 1 Up and Fun Dish of Florida alleged herein, DISH Network has suffered, is suffering and will continue to suffer irreparable damage and, unless Dish 1 Up and Fun Dish of Florida are restrained from continuing these wrongful acts, the damage to DISH Network will increase.
>
> 69. By their acts alleged herein, Defendants have engaged in trademark infringement and trade name infringement under the common law of the State of Ohio.

Plaintiff's Third Amended Complaint contains no factual allegations that Defendants

infringed other trademarks of Plaintiff apart from the allegations that Defendants used Dish Network trademarks on its website and infringed Plaintiff's trademarked vanity number. Plaintiffs Third Amended Complaint at Count VI already states a claim for common law infringement under Ohio law based on Defendants' use of Plaintiff's trademarks on its website. Count VIII is clearly limited to Defendants alleged infringement of the vanity number.

Therefore, for the reasons stated above, finding no Lanham Act trademark infringement for use of similar phone numbers, Defendants are entitled to summary judgment on Plaintiff's Ohio common law trademark infringement claim at Count VIII.

**Cancellation of Plaintiff's Trademark "DISH" as Generic and Lacking Secondary Meaning**

Defendants move for summary judgment on all Plaintiff's claims and on Count I of Defendants First Amended Counterclaim because  Plaintiff's federally registered  trademark for "DISH" is too generic or merely descriptive to entitle it to trademark protection.  Section 32 of the Lanham Act imposes liability on parties infringing on a federally registered trademark and reads in pertinent part:

(1) Any person who shall, without the consent of the registrant--

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

The United States Supreme Court has described trademark classifications as follows: "[m]arks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). "The latter three categories are considered inherently distinctive and are entitled to protection. By comparison, generic marks are not registrable. Descriptive marks are not inherently distinctive but may be registered if they have acquired a "secondary meaning" in commerce." *G.M.L., Inc. v. Mayhew* 188 F.Supp.2d 891, 895 -896 (M.D.Tenn.,2002) citing *Two Pesos*, 505 at 763–64. A trademark acquires secondary meaning when "it can be determined that the attitude of the consuming public toward the mark denotes a single thing coming from a single source." *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 596 (6th Cir.1989). In other words, a mark acquires secondary meaning when it "becom[e] distinctive of the applicant's goods." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1117 (6th Cir.1996).

"A generic term is the weakest type of mark; it is a term used to commonly describe the relevant type of goods or services, and 'cannot become a trademark under any circumstances.'" *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.* 78 F.3d 1111, 1117 (6th Cir. 1996) quoting *Induct–O–Matic Corp. v. Inductotherm Corp.,* 747 F.2d 358, 362 (6th Cir.1984). " A merely descriptive term specifically describes a characteristic or ingredient of an article. "

*Id.* A descriptive mark "is entitled to protection only upon a showing of secondary meaning," *Champions Golf,* 78 F.3d at 1117 by "becoming distinctive of the applicant's goods." *Induct–O–Matic,* 747 F.2d at 362.

"To acquire a secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, 'That is the article I want because I know its source,' and not the negative inquiry as to "'Who makes that article?' In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it." *Champions Golf,* 78 F.3d at 1117 quoting *S.P.A. Esercizio v. Roberts,* 944 F.2d 1235, 1239 (6th Cir.1991).

"Whether a mark is generic is a question of fact." *T. Marzetti Co. v. Roskam Baking Co.* 680 F.3d 629, 633 (6th Cir.,2012). When a party challenges the genericness of a federally registered trademark the "federal registration constitutes a presumption that the feature is not generic and the challenger bears the burden of overcoming this presumption." *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F.Supp.2d 671, 687 (W.D. Ky.,2010.) citing *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 502 F.3d 504, 513 (6th Cir.2007). "Telephone numbers may be protected as service marks, and telephone numbers that correlate with marks may be entitled to protection." *Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.* 542 F.Supp.2d 769, 775 (N.D.Ohio,2008).

Here, Defendants contend Plaintiff's "DISH" trademark is generic because "almost every dictionary includes "satellite dish" as one definition for the word "dish." (ECF # 337-1, pg 22). Defendants further offer evidence from Plaintiff's own admissions that other satellite retailers in Cleveland and Chicago used the term "dish" in their name. According to Defendants, such

15

extensive third party use weakens Plaintiff's mark and Plaintiff has not produced evidence of any enforcement actions against these other retailers.

Defendants also argue that Plaintiff's disclaimer of the term "DISH" when applying for other trademarks warrants cancellation. However, 15 U.S.C. §1056(b) allows for a disclaimed term to be later trademarked if it becomes distinctive.

Defendants further argue that if Plaintiff's mark were deemed descriptive rather than generic, it would still be entitled to summary judgment on Count I of its Amended Counterclaim for Cancellation because Plaintiff's "DISH" trademark did not acquire secondary meaning before Defendants began using the competing numbers.

Plaintiff's rely on the presumption of validity inherent in any federally registered trademark. Plaintiff further cites the Court to the surveys of experts Berger, Johnson and Stec for Plaintiff's assertion that all support the distinctiveness of Plaintiff's mark. Defendants dispute Plaintiff's interpretation and conclusions derived from these surveys. The parties dispute Berger's survey, offered in support of Plaintiff's trademark prosecution before the United States Patent and Trademark Office. Berger has since offered conflicting testimony on the scope and purpose of his original survey. Furthermore, the Court struck Stec's rebuttal report.

These disputes concerning the value of and conclusion drawn from competing expert testimony present genuine issues of fact for a jury to decide. The conclusions concerning the relevant surveys involve witness credibility determinations and factual conclusions reserved for the trier of fact, as it is within the jury's purview to assign weight and value to the competing expert opinion on survey evidence. Therefore, the Court finds that Defendants have not offered sufficient uncontested evidence of genericness to overcome the presumption of validity and the

Court denies Defendants' Motion for Summary Judgment on Count I of Defendants' Amended Counterclaim and denies summary judgment on the claims Plaintiff's Third Amended Complaint based on Defendants' Cancellation claim and defense.

**<u>Court has Already Determined Defendants Made Material Misrepresentations Concerning Their Affiliation with Plaintiff</u>**

In its Opinion and Order on Plaintiff's Motion for Partial Summary Judgment, the Court held that Plaintiff had demonstrated that Defendants made material misrepresentations concerning their affiliation with Plaintiff to consumers.  The Court further determined that Defendants continued to use Plaintiff's stylized DISH NETWORK mark on Defendants' website after Defendants retailer agreement had been cancelled, warranting summary judgment on liability for Plaintiff on Counts V and VI of its Third Amended Complaint.  Because Counts I-IV of Plaintiff's Third Amended Complaint depend, not on the validity and enforceability of Plaintiff's DISH mark, but upon the misrepresentations of Defendants agents and employees to consumers who misdialed, Defendants are not entitled to summary judgment on Counts I - IV of Plaintiff's Third Amended Complaint.  The Court further denies summary judgment for Defendants on Counts V-VI of Plaintiff's Third Amended Complaint for the reasons stated in the aforementioned Opinion and Order.

The Court further finds Defendants' Laches and Acquiescence arguments are inapplicable to the majority of the claims in Plaintiff's Third Amended Complaint, considering that Counts I-VI are not dependent upon Plaintiff's DISH trademark and the Court has granted summary judgment for Defendants on Count VII and VIII of Plaintiff's Third Amended Claim on other grounds.

Therefore, for the foregoing reasons, the Court grants summary judgment for Defendants on Counts VII and VIII of Plaintiff's Third Amended Complaint and denies summary judgment for Defendants on Counts I-VI of Plaintiff's Third Amended Complaint and Count I of Defendants' First Amended Counterclaim.

IT IS SO ORDERED.

<div style="text-align: right;">s/ Christopher A. Boyko<br>CHRISTOPHER A. BOYKO<br>United States District Judge</div>

Dated:  June 12, 2015