**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DISH NETWORK, LLC** | ) | **CASE NO.1:08CV1540** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **FUN DISH, INC. ET AL.,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Dish Network LLC.'s Motion to Amend its Complaint and/or Motion to Join Firas Essa as Related Party Under Rules 15 and 20 (ECF # 582), Defendants' Opposition to Motion to Amend and Request for Sanctions (ECF # 591) and Defendants' Motion for Sanctions Under Rule 11 (ECF # 596). For the following reasons, Plaintiff's Motion to Amend is denied, and Defendants' Motions for Sanctions are granted, in part, and denied, in part.

Plaintiff seeks to amend its Third Amended Complaint to add Firas Essa as a Defendant. Plaintiff alleges information has come to light demonstrating that Essa is the owner and alter ego of all the Defendants and is the ultimate wrongdoer.

Defendants seek sanctions because the Court has previously determined no further amendments would be permitted. Defendants further allege Plaintiffs have engaged in sanctionable conduct by alluding to information obtained in the course of settlement negotiations as the source of their allegations against Essa. After a hearing on the record, the Court was satisfied that Plaintiff did not engage in sanctionable conduct arising from any

improper use of confidential information.

**Procedural History**

On June 5, 2008, Plaintiff Dish Network, LLC filed its Complaint with the Court against Fun Dish, Inc. On July 17, 2008, Plaintiff filed an Amended Complaint alleging new facts and claims against Fun Dish, Inc. On August 28, 2008, Plaintiff filed for a Preliminary Injunction against Defendant seeking to enjoin Defendant's use of phone numbers which allegedly infringed on Plaintiff's trademark. On September 22, 2008, Defendant filed its Answer and Counterclaim to Plaintiff's Amended Complaint. On November 4, 2008, the parties submitted a Proposed Order for the Court's consideration. The Proposed Order sought permission to file a Second Amended Complaint by Plaintiff, adding two new Defendants. The Proposed Order contained the parties' agreement that the new Defendants would concede to the Court's personal jurisdiction and further agreed to Defendants' filing of an Amended Counterclaim. Plaintiff filed its Second Amended Complaint on November 7, 2008. The Court did not adopt the Proposed Order because on November 26, 2008, the parties filed an amended Stipulation which contemplated the filing of yet another amended complaint. On December 16, 2008, attorneys from DLA Piper LLP motioned the Court to appear pro hac vice as additional counsel for Plaintiff, which the Court granted. In doing so, DLA Piper stepped into the shoes of Plaintiff's original counsel regarding compliance with prior court orders and party agreements.

During this time there were numerous filings including, but not limited to, motions for sanctions, discovery disputes, motions to strike and motions for extension of time; many of which were referred to a Magistrate Judge for resolution. On December 31, 2008, Plaintiff

filed a Motion for Leave to File its Third Amended Complaint. Also, the parties were negotiating the resolution of the pending Motion for Preliminary Injunction, which was ultimately resolved by agreement of the parties.

On April 13, 2009, the Court granted Leave to File the Third Amended Complaint but held that no further amendments would be permitted based on the fact that in less than a year Plaintiff had filed four separate Complaints delaying the prosecution of the action significantly. Plaintiff had substantial resources as a Fortune 500 company to investigate its claims from the beginning. More importantly, the Court's 2009 Order was also the result of the parties' agreement that Defendant would withdraw its opposition to the Third Amended Complaint in exchange for Plaintiff's agreement not to seek any further amendments. DLA Piper did not file any objections nor seek reconsideration of the Order on behalf of Plaintiff. In addition, nothing prevented Plaintiff from filing a separate lawsuit against Essa based on Plaintiff's allegations that he engaged in fraudulent conduct arising from his business relationship with Plaintiff.

Plaintiff subpoenaed records from Firas Essa on November 14, 2008, that were directed in part to the alleged "fraudulent conduct of the Essas, and the identity of other witnesses and the consumers defrauded by the Essas." (ECF # 91 pg. 4). In its pending Motion to Amend, Plaintiff seeks to add Firas Essa as a Defendant based on an alter ego theory of liability.

Following a September 20, 2012 hearing on the record, the Court sanctioned Plaintiff, in part, for violating the Court's holding that no further amendments would be permitted. At the same time, the Court also sanctioned Defendants for their failures to produce Firas Essa

for a deposition and ordered that deposition be conducted shortly thereafter. The parties subsequently deposed Essa.

**Plaintiff's Motion to Amend**

On August 29, 2017, Plaintiff filed its Motion to Amend, alleging newly discovered information from Nationwide Mutual Insurance Company along with Plaintiff's own extensive discovery "over many years." According to Plaintiff, the newly discovered information confirms the alter ego nature and interconnectedness of the Defendant businesses and Firas Essa. Plaintiff seeks to assert all its remaining claims against Essa personally.

Over the past two years, Plaintiff contends it has obtained information demonstrating Essa used his businesses, including Defendants, to pass-through millions in revenue, expenses and assets for his own personal benefit. The newly acquired evidence allegedly demonstrates Essa is the ultimate wrongdoer in Defendants' illegal business practices. This information was purportedly obtained when the Court permitted the intervention of Defendants' insurer, Nationwide, in December 2015, over Plaintiff's objection, delaying the trial that was set for 2016. As a result of the intervention, Nationwide produced multiple insurance policies which Plaintiff contends show the intertwined nature of Defendants' businesses. In fact, Plaintiff states the evidence demonstrates that Defendants were not separate entities, and instead, indicates that Defendants and various Essa family members are insureds or additional insureds on a number of Defendants' insurance policies.

Furthermore, Plaintiff discovered statements made by Defendants' and Essa's accountant and former employees to the police in a criminal investigation of Essa, allegedly supporting Plaintiff's conclusion that Essa exercises complete control over the Defendant

entities. In addition, operating expenses of Defendants' businesses were, in fact, personal expenses of Essa family members. Essa transferred his house to a trust after Defendant Dish 1 Up was added to this case as a Defendant. Essa pled guilty to felony charges related to moving monies out of Dish 1 Up. Other discoveries include payments from one Defendant to another, phantom employees on the books of Defendants and various Defendant entities operating as one business with Firas Essa exercising control over them.

Plaintiff argues that amending at this late date will not prejudice Essa or Defendants since Essa has participated in the action since day one and the Fourth Amended Complaint would not seek to add new causes of action, but would instead seek to add Essa to the claims already before the Court.

Plaintiff further argues that amendment is warranted because the newly acquired information belies Defendants' prior representations that only Dish 1 Up kept and maintained the telephone recordings at issue in this case. According to the State of Ohio's expert report, Dish 1 Up, Fun Dish and Fun Dish of Florida operated out of the same facilities and Fun Dish and Fun Dish of Florida had no employees. Plaintiff claims this information was never disclosed to Plaintiff in discovery. Thus, any delays in seeking to name Essa were the result of Essa's obfuscation and not Plaintiff's lack of effort.

In the alternative, Plaintiff asks to join Essa as a related party based on the newly acquired evidence. Plaintiff argues joinder would prevent multiple suits, conserving judicial resources.

**Defendants' Opposition and Motions for Sanctions**

Defendants oppose the Motion to Amend and move the Court to sanction Plaintiff for

Plaintiff's "repeated and blatant violation of this Court's April 13, 2009 order." That Order expressly prohibited any further amendments. According to Defendants, Plaintiff's labeling the Order as merely "procedural" is incorrect and disrespectful to the Court as it ignores the fact that the Order was issued upon the express agreement of the parties that Plaintiff would seek no further amendments in exchange for Defendants' agreement not to oppose Plaintiff's Third Amended Complaint.

Also, Defendants contend that none of the materials are "new" information; rather, the purpose of the proposed amendment is frivolous. It is intended solely to delay trial nine years after the case was filed and four years after discovery has closed and to smear Essa's reputation. Defendants contend most of the documents predate the filing of the suit, and Plaintiff fails to explain how long it has possessed the documents.

Defendants present several reasons why the Motion to Amend should be denied and Plaintiff sanctioned. First, ***this is the second time Plaintiff has attempted to circumvent the Court's order forbidding further amendment. This Motion marks the sixth time Plaintiff has sought to amend its complaint.*** This alone speaks to Plaintiff's failure to effectively investigate its claims pre-suit as it is obliged to do. Second, the Court issued its Order prohibiting further amendment based on the parties' agreement to allow Plaintiff to file a Third Amended Complaint without opposition in exchange for Plaintiff's agreement not to amend further. Thus, Plaintiff exhibits bad faith as it now blatantly disregards its own prior commitment upon which Defendants relied for years. Third, Plaintiff posits the same basis for this amendment attempt as it did in 2012 when it first violated the Court's Order. There, Plaintiff also alleged Essa was the ultimate wrongdoer and alleged Essa controlled all the

Defendants. These assertions were unavailing then, and Defendants urge, are unavailing now.

Plaintiff has had over ten years to investigate Essa and has been familiar with Defendants since before the filing of this lawsuit as Defendant Dish 1 Up had a business relationship with Plaintiff dating to 2001 when Dish 1 Up was an authorized Dish Network retailer.

Furthermore, Plaintiff produced exhibits related to criminal proceedings brought against the Essas obtained from the State of Ohio, however, the Court has expressly cautioned that these criminal proceedings relating to Essa's brother have no bearing on the claims in this case. These documents from the State of Ohio, which Plaintiff alleges support amendment, either predate the lawsuit, or were available from the State of Ohio for many years, yet Plaintiff fails to explain why it did not seek this information years earlier. Statements from Defendants' accountant were made in 2006 and were discoverable years earlier. Materials from the State of Ohio's financial expert date to 2006, as do alleged Essa family statements. Furthermore, much of the materials are inadmissible at trial.

In short, Defendants contest the amendment as a repeated violation of the Court's 2009 Order prohibiting further amendments. It is an attempt to circumvent the parties' agreement not to seek further amendments. Further, it is based on inadmissible documents that due to Plaintiff's clear lack of diligence could have been discovered but were not produced for many years after the discovery cut-off. Lastly, it would prejudice Defendants at this late juncture because Defendants would require discovery on the new alter ego allegations.

Defendants seek sanctions under Rule 11, 28 U.S.C. § 1927 and the Court's inherent

authority, including dismissal, monetary sanctions or revocation of Plaintiff's counsel's pro hac vice status. Defendants argue sanctions are warranted due to Plaintiff's repeated violations of the same Court Order that resulted in prior sanctions to Plaintiff.

On November 28, 2017, the Court held oral arguments on the above motions.

**LAW AND ANALYSIS**

"It is well established under Supreme Court and Sixth Circuit precedents that a court's inherent power to sanction serves a punitive purpose, based on the need to deter misconduct and vindicate the court's authority." *Williamson v. Recovery Ltd. P'ship,* 826 F.3d 297, 305 (6th Cir. 2016), cert. denied sub nom. *Robol v. Dispatch Printing Co.,* 137 S. Ct. 1106, 197 L. Ed. 2d 184 (2017). The Sixth Circuit has held "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Metz v. Unizan Bank,* 655 F.3d 485, 490 (6th Cir. 2011) citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49 (1991). "Although a court 'ordinarily should rely on the Rules rather than the inherent power, *id.* at 50, 111 S.Ct. 2123, we read *Chambers* 'broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes.'" *Metz,* 655 F.3d at 490–91 quoting *First Bank of Marietta v Hartford Underwriters Insurance Co.,* 307 F.3d 501, 514 (6th Cir. 2002).

In this Circuit, the court need not conduct a full evidentiary hearing so long as the party against whom sanctions are sought has fair notice and a full opportunity to be heard. See *Metz*, 655 F.3d at 491.

Under Fed. R. Civ. P. 11, a party may be held responsible for sanctions due to filing a

lawsuit for an improper purpose or for raising frivolous arguments. However, the Sixth Circuit has expressly held "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the Court." *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). This Court notes that the safe harbor provision has been complied with.

Given the allegedly sanctionable conduct at issue does not fall squarely under Rule 11 or §1927, the Court proceeds to analyze the Motions under its own inherent authority to sanction.

This Court does not take lightly motions for sanctions but the prosecution of this action has placed the Court in the unenviable position of having to sanction repeatedly a Plaintiff that has engaged in a pattern of conduct of multiple needless delays, "scorched earth" litigation tactics, unreasonable demands, expensive litigation and intentional violation of Court orders, the result of which is an overly drawn out and unjustifiably expensive case. In 2009, the Court entered an Order prohibiting further amendments as the result of an agreement by the parties to resolve a dispute over Plaintiff's attempts to amend its Complaint three times in less than a year. Based on that agreement, wherein Defendants agreed to forego their opposition to the Third Amended Complaint in exchange for Plaintiff's agreement not to seek further amendments, the Court allowed the Third Amended Complaint with the caveat that no further amendments would be permitted. Then, in 2012, on the eve of the deposition of Essa, Plaintiff moved to amend their Complaint to add Essa as a Defendant. This, in spite of their previous agreement not to seek further amendments and a Court order adopting this agreement and ordering the same. The Court denied the Motion and issued

sanctions against Plaintiff for the attempt to amend and for other sanctionable conduct as outlined in the 2012 Order. The Court also sanctioned conduct by Defendants. The Court notes that the pattern of sanctionable conduct did not begin until after the appearance of DLA Piper in December 2008.

Having considered the Motions, briefs, supporting materials and the Court's own familiarity with the proceedings, the Court denies Plaintiff's Motion to Amend and grants, in part, Defendants' Motions for Sanctions. This is not merely a case of a Plaintiff being denied an opportunity to amend its Complaint which the Sixth Circuit has admonished courts to liberally grant. The Court's 2009 Order, prohibiting further amendments, was based on two factors. One, Plaintiff had amended its Complaint three times in a six month period, thus presenting four Complaints that Defendants had to answer. From these numerous amendments in a short period of time, the Court reasonably concluded: a) Plaintiff had failed to engage in a reasonable investigation of its claims prior to filing suit; and/or b) it was intentionally delaying the prosecution of the action or evidencing an intent to increase the cost and expense to punish Defendants for defending the suit. This alone warranted the prohibition.

Secondly, the Order was entered after the parties ***AGREED*** that Defendants would drop their opposition to the Third Amended Complaint in exchange for Plaintiff's agreement not to amend further. It was in the spirit of this agreement that the Court entered the Order.

Now, having already sanctioned Plaintiff for previous violations, including violation of the Order prohibiting amendments, Plaintiff, once again seeks to amend. The basis for this amendment is nothing more than a rehashing of the previous attempt to amend which the

Court found sanctionable. Plaintiff is determined to add Firas Essa as a Defendant based on allegations that they made back in 2008, before the amendment prohibition was entered. As the Court previously recognized, there was nothing preventing Plaintiff from amending the Complaint to add claims against Essa in 2008 before the Order or filing a separate lawsuit after the Order in 2009. There is no newly discovered evidence against Essa in this case. The insurance policies provided Plaintiff by Nationwide only list the insureds and additional named insureds. These policies provide no "smoking gun" or new evidence of the control Essa exercises over Defendants.

The information arising from the investigation of Essa and his family, conducted more than a decade ago, was discoverable during the open discovery period of this suit. The documents were not in the possession of Defendants; therefore, Plaintiff's failure to obtain them early in the suit was not due to some improper contrivance of Defendants. Rather, Plaintiff's own failure to obtain the documents, in spite of their own knowledge of the investigation pre-suit, is the sole cause of the late production. At the oral arguments on these motions Plaintiff's counsel acknowledged Plaintiff's own failure to pursue these records. "We can be accused of not following up enough, of not pursuing with vigor certain aspects, but that rewards people who objected and stood in defiance of our requests for appropriate documents, and that rewards them for failing to supplement and failing to produce in the first instance." (Oral arguments of November 28, 2017). These documents were in the possession of the State of Ohio, not Defendants. Neither were Defendant companies prosecuted by the State of Ohio, thus, its questionable at best, even if Defendants had the documents in their possession, that they had a duty to produce them. Nothing foreclosed Plaintiff from

requesting the information from the State of Ohio once the criminal case was closed in 2009.

Plaintiff deposed Essa in 2012 and Plaintiff admitted, when pressed by the Court, that Essa did not refuse to answer any questions. Plaintiff never filed a Motion to Compel based on his responses. As early as 2008, Plaintiff accused Essa of fraudulent conduct, but never sought to name him as a Defendant in their first four Complaints. Essa was no stranger to Plaintiff. Essa, as owner of Defendants, had a business relationship with Plaintiff dating to 2001. Plaintiff sent a cease and desist letter to Defendant in 2006 and filed suit in 2008. Given the resources of both Plaintiff, a Fortune 500 company, and its counsel, a major law firm, there is simply no reasonable basis for the failure to name Essa initially or to investigate him prior to suit or during the discovery period. In the absence of a reasonable explanation of these discovery and/or investigative failures, the Court must conclude such conduct demands a sanction.

The Court's conclusion is based on a number of reasons. First, Plaintiff has already been sanctioned for the same conduct. Second, the circumstances surrounding the filing of the motions to amend post the Court's 2009 Order are highly suspect. The first attempt in 2012 occurred on the eve of Essa's deposition wherein Plaintiff's sought to name him as a defendant and filed the Motion the day before his deposition. This placed Essa and his counsel in the precarious position of defending claims against him personally for which he had little to no warning. This latest attempt to amend comes less than six months before trial; but by the time the motion could be fully briefed and resolved, less than three months would remain. Of course, amendment will require reopening discovery as any claim that imposes liability on a newly named Defendant must necessarily require discovery to allow the newly

added party an opportunity to respond to the allegations. Counsel for Defendants has stated correctly that Essa would have every right to request discovery to oppose the alter ego allegations. Furthermore, Essa had every right to rely on the Court's 2009 Order during discovery. There is no question, in the Court's opinion, that allowing such an amendment, without reopening discovery and delaying trial, would work a manifest prejudice on Essa.

Therefore, the Court is left with the inescapable conclusion that Plaintiff's Motion to Amend is not made for a legitimate purpose but is intended to further delay the case, increase the costs and expense to punish Defendants and non-Defendant Essa and use Plaintiff's considerable resources to bludgeon Defendants into submission. In short, Plaintiff's Motion was filed in bad faith.

In light of the previously cited authority, the Court has the inherent power to sanction such conduct. Normally, the Court would issue an appropriate financial sanction and that would be the end. However, in this suit and in cases around the nation, which Plaintiff did not dispute, financial sanctions have failed to deter Plaintiff's deleterious behavior.

The United States Supreme Court has expressly held that a court's inherent authority includes the authority to dismiss a case for bad faith conduct. See *Chambers v. NASCO, Inc.* 5601 U.S. 32, 45 (1991)("As we recognized in *Roadway Express*, outright dismissal of a lawsuit, which we had upheld in *Link*, is a particularly severe sanction, yet is within the court's discretion."). While Plaintiff's conduct has been blatant and pervasive, the Court finds such a drastic sanction is not warranted. However, something more than financial sanctions, which have failed to deter Plaintiff's conduct in the past, is necessary.

Defendants have requested several sanctions, including revocation of the pro hac vice

status of Plaintiff's counsel. This power is within the Court's inherent authority. Local Rule 83.5 reads in part: "...any member of good standing of the Bar of any court of the United States or of the highest court of any state may.... be permitted to appear and participate in a particular case, or in a group of related cases." The Sixth Circuit considers this language as indicative of the district court's authority to revoke pro hac vice status as it is the "codification of the inherent authority of the courts to regulate the practice of law before them." *In re Hake*, 398 B.R. 892, 901 (B.A.P. 6th Cir. 2008), aff'd, 348 F. App'x 80 (6th Cir. 2009).

In light of the repeated violations of the Court's Order and in light of Plaintiff's continued sanctionable, bad faith conduct that persists undeterred by financial penalties, the Court revokes the pro hac vice status of all DLA Piper attorneys who have appeared in this case and on the Court's docket.[1] In order to minimize the impact of this sanction, and because the Court's own familiarity with the proceedings demonstrates that the law firm of Calfee Halter and Griswold is not implicated in any of the sanctionable conduct, as they were relegated to a minor, non-decision-making role in this litigation, the Court will allow the Calfee attorneys to continue Plaintiff's representation. Calfee attorneys originally filed the suit and have participated in the prosecution since its inception. Plaintiff will have the benefit of the advice and counsel of the Calfee attorneys who are intimately familiar with this case, thus, minimizing the prejudicial effect, if any, of this sanction on Plaintiff.

---

[1] The Court is convinced that based upon counsel's conduct in this litigation, DLA Piper's attorneys have forgotten that they are not simply puppets of their client, but "officers of the Court." Let this Order remind them that this designation carries important rights and responsibilities.

Furthermore, because the bad faith conduct was necessarily authorized by Plaintiff Dish Network itself, the Court orders Plaintiff and DLA Piper jointly to pay Defendants' reasonable attorneys' fees and costs associated with Plaintiff's Motion to Amend and Defendants' Opposition and Motions for Sanctions, including attendance at the oral hearing. Defendants shall file an itemization of their costs and fees, supported by affidavits, no later than seven days from the entry of this Order. Oppositions to the fee amount shall be filed no later than seven days after Defendants' itemization.

The Court is mindful that any sanction should be proportional to the misconduct and the Court believes the sanctions imposed against Plaintiff and DLA Piper meet that standard.

Lastly, recognizing that Plaintiff has directed an ongoing pattern of sanctionable litigation conduct, the Court will monitor Plaintiff's prosecution of the action and reserves the right to further sanction Plaintiff for any additional violations. Future sanctions could include evidentiary sanctions which may substantively impact the strength of Plaintiff's case and its defense to Defendants' Counterclaims. The case shall proceed to trial as scheduled and no further continuances will be granted.

**IT IS SO ORDERED.**

**s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

Dated: December 12, 2017